Belknap,
April 6, 1926.

## DAVID CHEEVER v. DIXIE G. ROBERTS.

The weakness of the paper title of one in possession of land does not entitle another to a verdict on a writ of entry unless he shows in himself a better right of possession.

One who was in possession of land under claim of title at the time of entry by another under a worthless paper title is entitled to a verdict on a writ of entry.

The plaintiff on a writ of entry is not obliged to prove the same kind of open, visible possession which would be required to support a claim of title by adverse possession. Possession for any length of time is sufficient evidence of title against one who sho s no better title.

Possession once acquired by entry continues in contemplation of law until there is an ouster by force of some hostile entry.

WRIT OF ENTRY, for a small island in Squam Lake. Trial by jury. At the close of the evidence the court directed a verdict for the plaintiff and the defendant excepted.

February 3, 1912, the plaintiff purchased of one Coolidge a group of small islands in Squam Lake consisting of "three or four little fellows and a big one," the largest of which was known as "Duck Island." The conveyance was a quitclaim deed in which the islands

were described as follows: "The following described islands and islets in Squam Lake, in the Town of Center Harbor, in the County of Belknap, State of New Hampshire, being the so-called Duck Island, together with any buildings thereon, with any small islets in the neighborhood which are distant not more than two hundred (200) feet from the said Duck Island, said Duck Island and said islets being situated all within the Town of Center Harbor, and about a quarter of a mile distant in a southeasterly direction from the easterly end of Long Island in said Squam Lake, and being some of the islands and islets described in the conveyances to me of said Long Island and the islands and islets adjacent to and in its neighborhood, as set forth in the deed of Elisha M. Fulton to me given June 22, 1892, and recorded with Belknap County Records, Lib. 88, Fol. 65–67, and also in a deed of the New Hampshire Land Co. to me given January 25, 1902, and recorded with said Belknap County Records, Lib. 108, Fol. 232, said island and islets having been held and occupied by me continuously since the time of said conveyances."

Under this deed the plaintiff immediately took possession of Duck Island, which he used as a camp site, and it was not denied by the defendant that the plaintiff has been in continuous possession of it ever since. The island in question, which was referred to by the defendant as "Little Duck Island," lies within one hundred twenty feet of Duck Island, and has an area of about a quarter of an acre.

In September, 1918, the plaintiff built a stone causeway from Duck Island to the island in question at an expense of one hundred thirty-seven dollars. This structure is one hundred thirty-five feet in length, four or five feet wide at the bottom and two and one-half or three feet wide at the top. The height above the foundation is "probably four feet," which the builder believed would bring the top above high water mark. It is made of loose rocks with flat stones on top to "make a passable place to walk." The material was taken from both islands and the bottom of the lake around the two islands. In the summer it projected about eighteen inches above the water.

The plaintiff testified that it was his purpose to build at some time a "sleeping shack" for his four boys on the small island, and he had the causeway built "to facilitate that and to consolidate the property. . . . It was in order to make a physical connection between these two pieces of my property."

In 1921 the defendant decided to obtain a location for a camp on Squam Lake. He testified that he "saw the Little Duck Island down there" and "went to the Selectmen of Center Harbor and found that there was n't anybody paying taxes on it." He then consulted an attorney, who advised him to get a quitclaim deed of the island from one Reed. The defendant testified that he "knew that Reed did not own it," but "Reed said that he would give him a deed of Little Duck Island for one dollar," which he proceeded to do.

Thereafter upon April 14, 1921, the defendant moved a portable camp onto the island and has since constructed two other small buildings on it. During all this time the defendant knew of the existence of the causeway between the two islands, and that "somebody had probably built it," . . . but "didn't think that it was necessary to make inquiries about it." He never looked at the county records to see if anyone owned or claimed to own the island "because he didn't think there was any particular need of it."

Other facts appear in the opinion.

Transferred by *Sawyer*, J.

*Jewett & Jewett* (*Mr. Stephen S. Jewett* orally), for the plaintiff.

*Stanton Owen* (by brief and orally), for the defendant.

BRANCH, J. The trial court directed a verdict for the plaintiff upon the ground that "the defendant's deed from Mr. Reed, who had no title at all, and who never had possession, gives the defendant not even a color of title." The reason assigned for this ruling is clearly untenable. The demonstrated weakness of the defendant's paper title did not entitle the plaintiff to a verdict. Since the defendant was in possession it was necessary for the plaintiff to show a better right to possession in himself before he could be entitled to a verdict. *Lear* v. *Durgin*, 64 N. H. 618; *Goulding* v. *Clarke*, 34 N. H. 148; *Atherton* v. *Johnson*, 2 N. H. 31. But a wrong reason for a correct ruling will not destroy a verdict (*Mason* v. *Railway*, 79 N. H. 300; *Nichols* v. *Fernald, ante* 186), and it will, therefore, be necessary to consider whether the ruling of the trial court can be sustained on other grounds.

Upon a writ of entry a verdict for the plaintiff can properly be directed only if the evidence establishes the plaintiff's right to immediate possession so conclusively that reasonable men could not

differ regarding it. But since this is purely a possessory action, like ejectment, which it superseded (*Woodbury* v. *Woodbury*, 47 N. H. 11, 23), it is not necessary that the plaintiff show a clear legal title in order to succeed. If his right to possession is conclusively established, a verdict may be directed, as in *Maxfield* v. *Lumber Co.*, 74 N. H. 158.

1. Whatever may be thought of the plaintiff's testimony that he had "cut away dead timber" and "filled in marshy places," there is no conflict in the testimony as to the building of the causeway from Duck Island to the island in dispute. This was an unequivocal and continuing act of ownership over the latter. The existence of the causeway unmistakably evidenced the plaintiff's exercise of dominion over both islands. It was in design and in effect a physical annexation of the smaller island to the larger one. Just as the defendant in *Little* v. *Downing*, 37 N. H. 355, extended the area of his actual occupancy by successive clearings of the woodland, and as the defendant in the case of *Moore* v. *Hodgdon*, 18 N. H. 144, extended the area of his possession by laying the foundations of a building, so here the plaintiff increased the extent of the territory under his actual and immediate dominion by making a physical connection, above water, of the small island to Duck Island. It was the plaintiff's purpose "to consolidate the property" and he effectually accomplished that design.

It is argued by the defendant that an uninformed observer might regard this structure as a breakwater, designed to improve the harbor of Duck Island, rather than as a causeway, designed for the purpose of passage from one island to the other. Conceding this to be true, it has no bearing upon the point now under consideration. The name given to a structure is immaterial, if in building it the owner actually exercises dominion over the land upon which it stands. No question of notice to other claimants is involved in this proceeding. The argument seems rather to have reference to the position taken in the defendant's brief, but abandoned at the oral argument, that, in order to sustain a writ of entry, the plaintiff must prove the same kind of open, visible possession which would be necessary to support a claim of title by adverse possession. This, of course, is not the law. The plaintiff in such a case is required only to show seizin in himself. "Possession for any length of time, however short, is sufficient evidence of title against one who shows no better right. But to establish against the owner a title by possession, an open, visible, continuous and exclusive adverse possession

for the period of twenty years must be shown." *Cushing* v. *Miller*, 62 N. H. 517, 525. This distinction was early pointed out by Richardson, C. J., in *Lund* v. *Parker*, 3 N. H. 49; and has repeatedly been recognized in subsequent cases. *Straw* v. *Jones*, 9 N. H. 400; *Woods* v. *Banks*, 14 N. H. 101; *Moor* v. *Campbell*, 15 N. H. 208; *Wallace* v. *Goodall*, 18 N. H. 439; *Berry* v. *Garland*, 26 N. H. 473; *Bassett* v. *Company*, 28 N. H. 438; *Barstow* v. *Sprague*, 40 N. H. 27; *Graves* v. *Company*, 44 N. H. 462; *Wells* v. *Company*, 48 N. H. 491.

Since it conclusively appears that the plaintiff had actual possession of the island in question at the time of the defendant's wrongful entry, it follows that a verdict was properly directed in his favor.

2. Defendant argues that the jury might have found that the plaintiff had abandoned any possession which he ever had of the island in question. No evidence to justify such a finding was pointed out to the court and none has been discovered in the record. It is true that the plaintiff, being a non-resident, visited his property only at considerable intervals, but it was not necessary that he do more in order to maintain his possession. "A state of things being shown to exist is presumed to continue until evidence to the contrary is shown." *Boynton* v. *Hodgdon*, 59 N. H. 247; *Cobleigh* v. *Young*, 15 N. H. 493.

In *Wallace* v. *Goodall*, 18 N. H. 439, where it was suggested that the plaintiff's grantor had abandoned his possession, the court said, "He was not bound in order to be enabled to transfer a possession to retain an actual *pedis possessionem*, for the possession that he had acquired by the entry continued in contemplation of law until there was an ouster, by force of some hostile entry."

*Exceptions overruled.*

All concurred.