Hillsborough,
Dec. 4, 1934.

### EDWARD GAGNE
*v.*
### NEW HAVEN ROAD CONSTRUCTION COMPANY.

*Chretien & Craig* (*Mr. Chretien* orally), for the plaintiff.

*Wyman, Starr, Booth & Wadleigh* (*Mr. Booth* orally), for the defendant.

WOODBURY, J.   The court was correct in his ruling that the plaintiff was entitled to compensation if his injury resulted from the effect of a compensable accident upon a pre-existing physical abnormality. *Guay* v. *Company*, 83 N. H. 392; *Thomson* v. *Company*, 86 N. H. 436, 437.   However, not having the benefit of the written record, the court seems to have misunderstood the defendant's contention.   Apparently the court understood that the defendant conceded that the plaintiff's injury was due in part to the accident and in part to the alleged deformity.   Such was not in fact the case.   The defendant contended that the accident was not in any way the cause of the injury, but only the occasion for the discovery of the plaintiff's deformity, and that the operation which caused the disability was performed solely to correct the deformity.   Since this misunderstanding denied the defendant an opportunity to have its contention passed upon there must be a new trial.

Various other matters are raised by the defendant's bill of exceptions which will here be considered since they are likely to arise at the next trial.

The defendant took exception to the amount of compensation awarded, not because it extended over too long a period of time, but because the amount per week was excessive.   The court found that the plaintiff was employed by the defendant at $30 per week previous to the accident, that he went to work as soon after the accident as he could, and that his wages in the later employment were $8.53 per week.   The court awarded compensation for total disability from the time the defendant refused further compensation up to the time the plaintiff went to work.   This was a period of 14 weeks, which, at $15 per week, amounts to $210.   From the time the plaintiff went to work after the accident for a period of four and one half years (234 weeks), the court awarded as compensation one half the difference between the amount which the plaintiff was earning before the accident and the amount which he earned thereafter which the court calculated at $11.23 per week.   This computation is inaccurate.   It should have been figured at $10.73 per week.   On the basis of the figures which the court used he arrived at his award of $2837.82; corrected, the award figured on the basis used by the court, should have been $2720.82.

The defendant contends that this amount is excessive because all the medical testimony indicated that the plaintiff was only 25% disabled, while the amount of the award is 75% of what would have been awarded had the plaintiff been totally incapacitated.

Degree of physical disability is not the measure by which to determine the amount of an award of compensation. "Compensation is awarded according to the extent of loss of earning capacity," *Freeman* v. *Pacific Mills*, 84 N. H. 383, 385. In determining the extent of loss of earning capacity the statute, (*s.* 22) provides that "regard shall be had to the difference between the amount of the average earnings of the workman before the accident and the average amount he is able to earn thereafter . . . ." Although the workman's capacity to earn before the accident is established by his average weekly earnings for his employer prior thereto, (*Abbott* v. *Company*, 80 N. H. 301) the statute nowhere provides that his earning capacity after injury is conclusively established by his average earnings as an injured man. "Regard" shall be had to such later earnings, but they are not to be used in computing compensation unless they reflect the workman's true capacity to earn. The statute provides no more than that later earnings are evidence of later earning capacity, to be considered with what other evidence there may be on the subject. Should it be made to appear that the earnings of the injured man do not show his true earning capacity the court should determine what he is able to earn. His ability to earn, rather than his actual earnings, should be used to measure the value of his working capacity after injury.

In computing the amount of compensation the court should first determine the workman's average weekly earnings while employed at full time by his employer prior to the injury; then the average amount which he is able to earn thereafter, and, on the basis of these amounts, fix his compensation somewhere within the limits prescribed by the statute. To fall within these limits the award must in no event exceed the damage suffered, nor shall any weekly payment exceed $15, (*s.* 24) nor shall it "exceed the difference between the amount of the average weekly earnings of the workman before the accident and the average weekly amount which he is earning or is able to earn in the same employment or otherwise after the accident, but shall amount to at least one half of such difference." *s.* 23. It is a question for the court to determine on the evidence before him where within these limits compensation should be fixed.

In the case at bar the court has confined himself within the limits prescribed, and if the wage of $8.53 per week shows the plaintiff's actual capacity to earn as an injured man, the award of compensation, as corrected, is unexceptionable. On the other hand, if the plaintiff's wages after injury do not reflect his true earning capacity,

then the amount of the award should be revised. This question can be determined at the next hearing.

The defendant also excepted to the amount of the award because it was not "given the benefit of any discount by reason of the excess in value of a present lump sum payment over weekly payments extending over a period of four and one-half years." In support of this proposition the defendant cites *Golej* v. *Varjabedian,* 86 N. H. 244. This case was determined under the death statute (P. L., c. 302, s. 12) and has no bearing here. No discount for present payment of a lump sum is permissible under the workmen's compensation act. This act provides, (s. 27) that judgment, if for the plaintiff, "shall be for a lump sum equal to the amount of payments then due and prospectively due hereunder."

The defendant's last exception relates to the exclusion of certain evidence. The doctor who attended the plaintiff testified that on the day previous to the day the insurance company refused further voluntary payments of compensation he had a conference with the plaintiff and the insurance company's adjuster in his office. The plaintiff testified that at this conference the doctor said that his foot had been deformed prior to the accident and that it was then in as good condition as it ever had been.

During the cross-examination of the plaintiff the defendant offered to show that soon after that conference the plaintiff called upon the insurance adjuster and offered to discharge his attorney and accept whatever the insurance company would pay in settlement of the case. This evidence was offered to indicate that the plaintiff was then "in pretty good shape." Upon objection being made the court rejected the defendant's offer, and the defendant excepted.

After the plaintiff had rested, the offer of proof was renewed and the court then ruled that the defendant could "put it in." The defendant called the adjuster who testified that the plaintiff called upon him in his office and "asked if I would make any payment to him for the loss of his toe in addition to the compensation for lost time already made." The adjuster told the plaintiff that it was not proper for him to talk "settlement" until he had paid and discharged his attorney, but if he would do that, then he "would be glad to talk to him in regard to any further payment that might be made, as a compromise, further that it is an offer to avoid litigation." At this point the court stopped the witness and excluded further testimony on the point subject to defendant's exception.

Evidence of offers or efforts to compromise litigation are not ad-

missible on the issues of liability or damages. *Caplan* v. *Caplan*, 83 N. H. 318; *Kenney* v. *Len*, 81 N. H. 427, 435 and cases cited. Two reasons are commonly given for this rule. First, that it is against public policy to discourage the settlement of litigation, which would surely be done unless the parties could treat with one another without prejudice; and second, that such offers or efforts are referable as much to a desire for peace as to an admission of liability, and so to permit a verdict to be found on the basis of such testimony would be to permit it to be found, in part at least, upon guess or conjecture. *Perkins* v. *Railroad*, 44 N. H. 223; *Colburn* v. *Groton*, 66 N. H. 151.

This rule is not, however, rigidly applied except in those cases where no more appears than that the parties were attempting to settle their controversy by means of a compromise. For instance, if during the course of negotiations for settlement, one party distinctly admits a material fact, such admission not being obnoxious to the hearsay rule (2 Wig. Ev. ss. 1048-49), is competent, and is not rendered incompetent because of the fact that it was made in the course of an effort to compromise. *Rideout* v. *Newton*, 17 N. H. 71, 73; *Eastman* v. *Company*, 44 N. H. 143, 154; *Plummer* v. *Currier*, 52 N. H. 287, 296. In these cases, if the reason for the general rule of exclusion is public policy, the public policy which protects litigants in the compromise of their disputes, bows before the stronger public policy which requires that issues of fact be determined on the basis of the greatest amount of relevant non-prejudicial testimony. If the basis for the rule is the ambiguous nature of acts done in the way of compromise, then the rule of exclusion fails because the admission renders the act no longer ambiguous.

Then there is another group of related cases in which, although there is no distinct admission of any independent fact, there are circumstances surrounding the negotiations for compromise which might lead to the inference that the party who entered into the negotiations did so because of his lack of confidence in the merits of his case rather than because of his desire for peace. Here the rule is that there is presented a preliminary question of fact as to the motive which induced the effort to compromise. *Greenfield* v. *Kennett*, 69 N. H. 419; *Cavanaugh & McCaffrey, Inc.* v. *Barnard*, 83 N. H. 370, 372, and cases cited. If the trier of this preliminary issue finds on evidence that there was other than the mere offer or effort to compromise, that there was an intention to admit liability, then such admission may be used for what it may be worth on a main issue of the case. On the other hand, if the trier finds that there was no such intention,

then there is no admission to be considered on the principal issue. The preliminary question, being one of fact, is not reviewable here except as other similar questions are reviewable. *Greenfield* v. *Kennett, supra.*

In this last class of cases there is a line of authority to the effect that an offer or payment by a defendant of all damages is a circumstance sufficient to warrant the inference of an admission of liability and so to raise the preliminary question of fact. *Coffin* v. *Plymouth,* 49 N. H. 173; *Grimes* v. *Keene,* 52 N. H. 330; *Gray* v. *Rollinsford,* 58 N. H. 253; *Altman* v. *Railway,* 75 N. H. 573; and *Davidson* v. *Insurance Co.,* 80 N. H. 552.

On the basis of these cases the defendant argues that "it must be equally true that an offer by a plaintiff to drop his case for whatever the defendant will give contains an admission that his case is groundless." The analogy is well drawn but it does not follow that the defendant is entitled to put this evidence in as a matter of law. The above cases go no further than to hold that a payment or offer of all damages is sufficient basis for a preliminary finding that the defendant thereby admitted his liability. They do not go so far as to hold that an offer to pay all damages compels the finding of an admission of liability. "The amount paid or offered may be one of the circumstances to be weighed on the preliminary question; but the law does not make it the test. An entire claim may be paid to avoid a lawsuit, the payer intending to admit nothing but his desire for peace, the claimant understanding that nothing else is admitted, and both parties believing that the payer is not liable, or having no opinion on the subject." "The proposition that an admission of liability is necessarily to be implied from the payment of a claim or an offer to pay it, is contrary to the fact." *Colburn* v. *Groton, supra.* Similarly when the plaintiff has said he will accept anything the defendant may offer in settlement the preliminary question of fact remains as to whether or not this amounts to an admission. Although the amount is one of the circumstances it does not preclude the consideration of other circumstances.

The record does not clearly disclose the basis of the court's ruling excluding the defendant's proffered evidence, but it is to be inferred from the fact that the court did not permit the witness to complete his testimony that the ruling of exclusion was made because the court considered it legally incompetent. This was error. In this case the evidence was neither admissible nor inadmissible upon the main issue of fact as a matter of law. Its admissibility depends upon the answer

given to the preliminary question of fact, and this question can only be answered after hearing the evidence concerning the circumstances which surrounded the efforts to compromise. If, after hearing this evidence, the court is of the opinion that it is insufficient to warrant the inference of an admission, then he should not consider it, and in order to protect the rights of the parties make a ruling to that effect. On the other hand, if he is of the opinion that it is sufficient to warrant the inference, then he should consider it for what it may be worth on the principal issues of the case.

*New trial.*

All concurred.