Strafford,
March 1, 1938.

EUGENE VALLÉE *v.* SPAULDING FIBRE COMPANY.

*Ovilla J. Gregoire* and *William H. Sleeper* (*Mr. Gregoire* orally), for the plaintiff.

*Hughes & Burns* and *Charles F. Hartnett* (*Mr. Burns* orally), for the defendant.

ALLEN, C. J. The main underlying issue in the case is the cause of the plaintiff's loss of earning capacity during the period for which compensation has been allowed. At the time of his accident he already had certain physical troubles, and it is the defendant's position that the evidence permits no inference that they were not the

sole cause of the disability during the period. The defendant admitted some disability resulting from the accident. It paid compensation for six months thereafter, but claims that the accident could not be found to be a factor productive of any subsequent disability.

A substantial fallacy in the defendant's argument appears to lie in its insistence that the direct consequences of the accident are limited to the immediate ones. When hurt, the plaintiff had a spinal malformation and chronic bronchitis. In the accident four ribs were broken, one of which pierced a lung. Recovery from the fractures and the lung injury did not establish full recovery from the accident. The defendant had in its employ a workman suffering from a physical defect and a chronic ailment. So far as the accident affected them, either in immediate connection or in the course of causative sequences which could be found to have direct, and more than remote relation to the accident as connected links in the chain, their disturbance was properly attributable to the accident. It was not necessary that the parts of the body which they involved should receive traumatic injury. If the accident or its direct consequences brought about aggravation of the spinal trouble or a more rapid and progressive activity of the bronchial disease, the disability therefrom ensuing would be directly traceable to the accident.

In another aspect the defendant's position unduly limits the direct effects of the accident. The mind as well as the body may be hurt as the causal outcome of a traumatic injury. If the conditions and progress in the course of recovery affect the mind in such a way as to retard recovery, the resulting extension of the period of disability may be found to be due to the accident. Provided the workman does what he reasonably may to terminate the consequences of an accident (*Neault* v. *Company*, 86 N. H. 231), the result of mental disturbance in slowing the progress of recovery may fairly be proximate in character. Short of definite mental derangement requiring treatment by alienists, a mental state calling for psychiatric service is pathological. It is comparable, if not allied, with a neurotic disorder. Discouragement, depression, and defeat produced by the aftermath of an accident and in turn productive of further aftermath may serve as a part of the consequential process. Loss of work and of bodily strength and activity due to an accident may produce depression or melancholy which though mild in form may prolong the loss. The extent, nature and effect of the mental hurt are all inquiries of fact.

.

The court found that at a time about a year after the accident "as a result of the accident, he [the plaintiff] has lost his grip on life and needs psychiatric treatment. . . . He complains of back pains . . . probably due to his general run-down condition which is due in part to the accident."

The defendant's medical expert testified that in his opinion some of the plaintiff's condition was due to his injury, that some soreness from the broken ribs persisted and greatly worried him, and that he was suffering from "a mental condition to a large extent which started at the time of the accident," so as to account for his feelings of weakness and loss of strength whenever he tried to do any work. He further testified that the plaintiff's complaints of backache were due to the long time he had been out of work, his apprehensions about himself, the long period of sitting around and disuse of his back muscles, so that they had become soft and weak, and so that he needed some exercise and some encouragement, and ought to have his general condition built up.

This evidence, together with that tending to show that before the accident the plaintiff worked steadily while unable to work after it except to a negligible extent, that he ran down in general health after the accident, losing fifteen pounds in weight and becoming anaemic, that he had severe back pains and that his complaints were not of pretended suffering, is sufficient to support the findings. Although the plaintiff's back was not hurt in the accident, it is reasonable to infer that inactivity due to the accident brought about some condition in connection with his spinal deformity which caused suffering from it, and although his chronic bronchitis was progressive as time went on, it is a fair deduction that the accident developed and increased the speed of its progress.

These considerations dispose adversely of many of the defendant's exceptions, including those to the denial of the motion to dismiss and to the findings which have been stated. The findings were reasonable inferences though contrary ones may also have been. *Boucher* v. *Larochelle*, 74 N. H. 433.

With reference to the period of disability, a finding that the plaintiff had no earning capacity up to the time of the trial about a year after the accident except for the short time when he undertook to return to work, was warranted. He had been treated, advised, and examined by a number of doctors and had gone to a hospital in Boston for treatment and observation in the fall after the accident, besides being a patient at the local hospital where he lived upon the

occurrence of the accident. The doctor at the head of the hospital in Boston testified that his mental state made greater demand for treatment than the physical, that "careful management and treatment" for it was needed, and that he would expect him "eventually" to be "perfectly well." Taking this into account with the other evidence, the court also had a sufficient basis for forming an opinion of the probabilities of the duration of the disability both in its total and partial divisions.

The finding that total disability would continue for nearly another year after the trial was not a finding that it would then cease to be total, but was one that it would probably continue at least until then; and similarly, as to the probable term of partial disability, the finding implied no more than conjectural uncertainty beyond it. The suggestion that the findings are of sudden transition from total to partial, and from partial to no disability is lacking in any logical appeal.

The case differs from that of *Emerson* v. *Company*, 87 N. H. 108, in which the evidence was of possible, but not of probable, future effect of injury. Here there is evidence of disability to be incurred, from which an estimate of its duration might be reasonably made. It may be conceded that the court went to extreme limits, but it is thought that his conclusions were not beyond the range of reasonable forecast based upon the evidence. It is generally known that an extended length of time is usually required for recovery when a bodily condition produces some form of mental sickness which in turn operates to produce a continuance, in the same or different form, of the bodily conditions, and an estimate of the length of time is not altogether problematical because it relates to a matter of special knowledge, evidence of which is not introduced. In some degree general knowledge is also available as a basis of reasonable forecast. If the forecast lacks reliability, yet if it has a bare excess of more over less probability, the legal test is observed.

The opinion of an expert might, or might not be of aid. It would not be a statement of knowledge or learning, but would be a forecast based thereon. The duty to pass on it in acceptance, rejection or modification presupposes some authority to form an independent opinion without the benefit of special qualification. Conclusions about the future are in general more uncertain than those about the past, and practical needs do not yield to intensive refinements. Insufficiency of evidence is not shown by its lack of abundance. The boundary line between probability and conjecture is itself fixed by

opinion, and the line must be run with some allowance for variations. The legislation has no command that proof of duration of disability from an injury shall be as strong as that of the injury. A conjectural finding is not permitted, but one may be reasonable which might be conjectural if more evidence were available but not produced.

The court disallowed many requests for findings and rulings in a comprehensive ruling that they were "immaterial, not supported by evidence, inconsistent with findings, or because partly wrong and partly right." Error in this manner of disallowance is not perceived. The denial as to each request was either proper or erroneous. If proper, a wrong reason for it was of no consequence. *Cheever* v. *Roberts*, 82 N. H. 289, 291, and cases cited. The court had no duty to state specifically its reasons for the denial of each request. The defendant's right to except to the denial was not abridged or disturbed in any way. Among its various requests there was none that the court should explain its action on them, and it had no right to the allowance of such a request had it made one.

The exceptions to evidence are overruled. One relates to some hypothetical questions, the claim being that they assumed facts of which there was no evidence. The assumptions were of effect on the plaintiff's back from the consequences of the accident and not directly from injury to it in the accident. The record contains evidence of such effect, and so far as the questions were answered, the answers were admissible. Another exception is to the admission of the testimony of a doctor of his reading of an x-ray photograph when the reading was based more on another doctor's reading of it than on the witness' personal opinion. The defendant later introduced evidence which confirmed and coincided with the reading, and thereby waived the exception.

The court allowed as much weekly compensation for partial as for total disability, and to such an extent that the weekly allowance for partial disability combined with the probable weekly earning capacity during its period equals the full weekly earnings preceding the accident. It is argued that this is contrary to the act (P. L., c. 178, ss. 21, 23). By the act, for total disability the weekly allowance is not to exceed one-half the full weekly amount earned before the accident. For partial disability it shall be at least one-half the difference between such full weekly amount and the earning capacity during partial disability, but it shall not be so much that with the earning capacity added the workman receives more than before the accident,

nor shall it exceed one-half the earnings before the accident. Another section (*s.* 24) limits the weekly allowance in any case to actual damage sustained and to $15. This is its plain reading, which received acceptance in *Gagne* v. *Company*, 87 N. H. 163, 166. That the act treats partial disability more favorably than total disability cannot invoke judicial action removing the inequality. In the absence of a doubtful meaning of the language used, legislation may not be construed to conform with more equitable concepts than guide it.

The act invokes some exercise of equitable discretion in dealing with the matter. It is not clear whether the discretion was here employed. It is to be assumed that it was unless the contrary appears. But after the findings of the plaintiff's terms of total and partial disability and of his earning capacity during partial disability he was held "therefore" entitled to extreme limits of allowance. Thus "The record as transferred is ambiguous, and has some tendency to show that discretion was not exercised, sufficient to overcome the presumption. . . . In this situation the appropriate procedure is to return the case to the superior court for an order, or for amendment. . . If the court did not exercise its discretion and make a finding upon the issue . . . , the defendant is entitled to a new trial. If discretion was exercised, and it was intended to reserve the question of the sufficiency of the supporting evidence, such evidence should be fully reported." *Gerry* v. *Neugebauer*, 83 N. H. 23, 27. The exception to the ruling was here general and correlated with the exceptions to the denial of the requests that any extreme allowance should be only for total disability and that any award should be substantially less than the maximum. It thus fairly raised the issue of discretion. All the evidence at the trial being transferred, it is assumed to include all that upheld the conclusion if the conclusion was discretionary. But it is not orderly procedure for this court to pass upon the issue of proper exercise of discretion unless it appears that it has been exercised. *Atherton* v. *Rowe, ante,* 196. If discretion was not exercised, there should be a new trial, the extent of which is for the trial court to determine under the rule stated in *West* v. *Railroad*, 81 N. H. 522, 534, 535.

There appears to be no occasion for more specific statement than is herein made of the consideration given to the numerous exceptions. Their examination in detail leads to the conclusion, under the general views taken or for special reasons stated, that they should

all be overruled, with only the one relating to the amount of the award remaining in abeyance.

*Case discharged.*

All concurred.