Merrimack,
No. 4942.

JOSEPHINE R. ARMSTRONG

*v.*

LAKE TARLETON HOTEL CORPORATION *& a.*

Argued September 6, 1961.

Decided October 27, 1961.

*Broderick, Manning & Sullivan (Mr. Broderick* orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *John F. Cullity (Mr. Cullity* orally), for the defendants.

LAMPRON, J. Plaintiff contends that she is entitled to an award for 341 weeks at $33. The agreement executed between the parties on June 27, 1957 and approved by the Labor Commissioner July 8, 1957, provided that plaintiff was to receive compensation at the rate of $33 per week payable from and including the 15th day of June, 1957 "until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of New Hampshire." RSA 281:36. She maintains that this is an award still in effect since it has not been modified by the Commissioner under section 40 of the Law and is therefore determinative of the continuance of her total disability. *King* v. *Kniznick*, 98 N. H. 247, 249. She argues further that, if her present petition should be considered as one for modification of the agreement, the defendant has failed to sustain its burden of proving her ability to work at any gainful occupation. RSA 281:23.

We said in *Cassidy* v. *Company,* 98 N. H. 441, 444, 445, that "In the usual case where an employer or his insurer claim that disability has ended, orderly procedure would dictate that the burden should be upon them to seek review by a suitable petition to the Commissioner or Court, as the case may be." Upon the filing of such a petition by the employer or insurer, the Legislature has provided as follows by an amendment to RSA 281:40, effective July 15, 1959: "When application under this section is made for reduction of compensation, or ending of same, the applicant must accompany such application with medical evidence that the injured employee is physically able to perform his regular work, or able to engage in gainful employment. On the basis of such medical evidence the commissioner may authorize suspension of further payments pending a hearing before him; otherwise compensation shall continue on the existing agreements until hearing and award is made by the commissioner." Laws 1959, 187:9. This amendment however does not apply to this case which was decided by the Commissioner before its effective date.

Other provisions of the Law in effect when plaintiff filed her petition provided that compensation is to be paid during disability for work resulting from an injury and that "payments shall not continue after the disability ends." *Zeady* v. *Company,* 96 N. H. 328, 330; *Latour* v. *Producers Dairy,* 102 N. H. 5, 8. This language places the burden on the plaintiff to prove the duration of her disability. *Flannagan* v. *Shevenell,* 82 N. H. 403, 404. Even though failure of the defendants to seek review of their agreement by petition under the Law may have been prima facie evidence of the continuance of plaintiff's disability (*Dube* v. *Bickford,* 92 N. H. 362, 364) it did not relieve her from the burden of proving the extent and duration of the disability for which she seeks compensation which are questions of fact for the Trial Court. *Condiles* v. *Waumbec Mills,* 95 N. H. 127, 129; *Enos* v. *Abrasive Machine Tool Co.,* 84 R. I. 454, 456.

The Trial Court found that plaintiff was totally disabled from June 14, 1957, until November 8, 1957 and that she was partially but permanently disabled thereafter with an impairment of twenty per cent. Plaintiff contends that on the evidence the Court could only find that the ability to work at any gainful occupation has not been recovered and that she was therefore entitled to total disability for the maximum statutory period.

"Compensable disability is inability, as the result of a work-

connected injury, to perform or obtain work suitable to the claimant's qualifications and training." 2 Larson, Workmen's Compensation Law, s. 57.00. "An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist, may well be classified as totally disabled." *Id., s.* 57.51; *Colantonio v. Company,* 97 N. H. 23, 25. "Inability to get work, traceable directly to a compensable injury, may be as effective in establishing disability as inability to perform work." 2 Larson, Workmen's Compensation Law, s. 57.61. *Valley v. Wolfeboro,* 103 N. H. 162, 164.

Plaintiff, who was 66 years of age at the time of the trial, has not been gainfully employed since her injury and has not sought employment. There was evidence that since 1955 she has had a facial tic which causes the eyelid on her left eye to drop shutting off the sight from that eye. She also testified that she has had a tremor in her right hand which began sometime after her injury. When asked "have you tried to get work since you were hurt?" her reply was "No, I am licked. I am depressed. I am morose. I am melancholy."

Over defendants' objection, plaintiff introduced the testimony of two employment counselors on the staff of the State Department of Employment Security. They testified that, given plaintiff's education; the disability in her right arm caused by this fall; her facial tic and the tremor in her right hand; her nervousness; the result of certain tests given to her, it was their opinion that her services could not be sold in the labor market, in other words they did not believe they could place her in employment.

The Trial Court could find that this testimony would probably aid it in arriving at the extent of plaintiff's disability. *O'Haire v. Breton,* 102 N. H. 448, 450. The fact that the experience of the witnesses was in the New Hampshire labor market and that they were not familiar with the market in New York went to the weight only of their testimony. *Paisner v. Renaud,* 102 N. H. 27, 31. Defendants' exception to the admission of this testimony is overruled.

The Workmen's Compensation Law is designed to afford compensation for loss of earning capacity due to injury arising out of and in the course of employment. *Peak v. Company,* 87 N. H. 350, 352. Plaintiff's sense of discouragement, depression and defeat, if found to be due to her accident, would have to be considered by

the Trial Court in determining her disability. The extent, nature and effect of mental hurt are all inquiries of fact. *Vallee* v. *Company,* 89 N. H. 285, 287. Her physical defects or ailments existing prior to the accident as well as any which may become manifest thereafter become material factors in determining plaintiff's inability to work at any gainful occupation if "the accident affected them, either in immediate connection or in the course of causative sequence which could be found to have direct and more than remote relation to the accident." *Vallee* v. *Company, supra; Bolduc* v. *Company,* 96 N. H. 235, 237; *Walter* v. *Hagianis,* 97 N. H. 314, 317; *United States F. & G. Co.* v. *Gagne,* 103 N. H. 420.

However as previously stated "Inability to get work traceable directly to a compensable injury may be as effective in establishing disability, as inability to perform work." 2 Larson, Workmen's Compensation Law, s. 57.60. Consequently plaintiff takes the position that even though the pre-existing tic in her face was not caused or affected by the accident; and even if the tremor which developed in her arm sometime after the accident be found not to have resulted from her fall while in defendant's employment; they are nevertheless factors to be considered, with the disability caused by the accident, in determining whether she is able to engage in gainful occupation. We agree that if the accident has limited the extent of the services which plaintiff with ailments and disabilities can render so as to narrow or eliminate any market for her services, that is a factor to be considered by the Trial Court in determining the extent of her ability to engage in gainful occupation as a result of her accident. *Dunbar Fuel Co.* v. *Cassidy,* 100 N. H. 397, 403.

There was evidence from employment counselors that although plaintiff was not totally incapacitated for work there was serious doubt that an employer could be found who would hire her. On the other hand the physician who treated her stated on December 15, 1957 "I believe Mrs. Armstrong is ready to perform light duties." A doctor who examined her for the defendants concluded in a written report dated November 8, 1957 "The injury has reached the status of permanency, I believe the patient should return to work. No further treatment is indicated. Patient's permanency should be evaluated from 15-20% permanent loss of right arm." There was also testimony that she could sew and do ordinary household duties and that except for the tremor in her right hand,

not related to her accident, her injured right arm is just as functional as her left arm.

Earning capacity after injury cannot be determined solely on the basis of direct and positive testimony but requires "within the limits established by the statute, the exercise of judicial discretion." *Dunbar Fuel Co.* v. *Cassidy, supra.* The question to be decided by the Trial Court was whether plaintiff's inability to perform work and to obtain employment was traceable directly to the injury sustained in the accident or whether it was due merely to her age, her prior disabilities and the necessarily growing paucity of jobs which she can perform. See *O'Brien* v. *Manchester Yarn Mills,* 95 N. H. 118. In other words what effect her fall while employed by defendant has had on her ability to work and secure employment with her disabilities even though some of them were not caused nor aggravated by the accident. *In re Gagnon's Case,* 144 Me. 131.

We are of the opinion that the evidence warranted the Trial Court's finding that plaintiff's total disability from injuries received in her accident ceased on November 8, 1957 and that from that date a partial permanent impairment of her right arm of 20% has caused her to suffer a loss of earning capacity of $18 per week. *Morono* v. *Cody,* 99 N. H. 479, 481; *Dunbar Fuel Co.* v. *Cassidy,* 100 N. H. 397, 403; *Latour* v. *Producers Dairy,* 102 N. H. 5, 8. The amount of loss of earning capacity found was not excessive as contended by the defendant which produced no evidence to controvert the medical evidence of a permanent physical disability of 20% in her right arm. The Trial Court in its judicial discretion could find that plaintiff's earning capacity was affected to the extent found. *Kacavisti* v. *Sprague Electric Co.,* 102 N. H. 266, 270.

In arriving at this conclusion we have considered plaintiff's argument that the Trial Court's finding that her "present and future earning capacity is $35 per week" can be implied to mean that temporary total disability continued until August 31, 1960, the date of the Court's decree. We are of the opinion that the Court's specific finding that plaintiff was totally disabled until November 8, 1957 and partially disabled thereafter as well as the findings, rulings and decree as a whole do not permit or support the inference urged by the plaintiff.

The Trial Court in decreeing that plaintiff was entitled to two-thirds of $18 for 319 weeks from which are to be deducted 21 weeks during which she was paid total disability evidently intended to find and rule that plaintiff was entitled to such benefits for the

entire period permitted by the Law. Since this accident happened on June 14, 1957, the statutory limit was 341 weeks from which the period of total disability is to be deducted and the decree should be amended accordingly.

*Remanded.*

All concurred.