Belknap,
No. 5677.

DOROTHY L. STRAHAN

*v.*

HUNTER HOSIERY, INC. *& a.*

Argued February 6, 1968.
Decided June 28, 1968.

*Normandin, McIntyre, Cheney & O'Neil* and *David O. Huot* ( *Mr. Huot* orally ), for the plaintiff, Dorothy L. Strahan.

*Wescott, Millham & Dyer* ( *Mr. Harold E. Wescott* orally ), for the defendants, Hunter Hosiery, Inc. and Merchants Mutual Insurance Company.

LAMPRON, J. Appeal to the Superior Court under RSA 281:37 from an award made by the Labor Commissioner. Hearing before a master ( *Leonard C. Hardwick,* Esq. ) who made certain findings and recommendations which were approved by *Griffith,* J. Plaintiff's exception to the denial of her motion to set aside the findings, rulings and decree was reserved and transferred.

The master's report reads in part as follows:

"On March 17, 1961, the employee suffered a burn on the lateral [outside] aspect of her right leg, while in the employ of Hunter Hosiery, Inc. The injury arose out of and in the course of her employment. At the time of her injury the employee had been in the employ of Hunter's for about three months. Her straight time earnings computed in accordance with the stat-

utory formula was $45.20 per week. The injury was not immediately disabling. The employee attempted to treat the burn herself for a period after the accident. However, there was no response to such treatment, and a non-healing ulceration developed. On June 30, 1961, she consulted a Doctor Brody, who attempted to treat the ulcer unsuccessfully and referred the employee to Doctor Gage.

" The employee had a past history of 'milk leg' during pregnancies some fourteen years previous. At the time of her injury the employee was suffering from phlebitis and varicose veins. This diseased condition was in no way caused by the burn. However, it was due to this diseased condition of her leg that the non-healing ulcer developed at the point of the burn. In an attempt to correct the ulceration, Dr. Gage operated on the employee's leg on February 13, 1962, and certain blood vessels were cut, clamped or stripped. The employee was out of work because of the operation and recovery therefrom for a period of four weeks. The ulceration at the point of injury healed and Dr. Gage discharged his patient on March 16, 1962. However, when she sought to return to work at Hunter's she was laid off. She remained unemployed, drawing unemployment compensation, for a period of about 20 weeks. She then received employment at J. P. Stevens and Company at a starting rate of $1.42, which was later increased to $1.82.

" Although the burn wound had healed, the employee continued to suffer from pains in and swelling of her right leg. Recurrent ulcerations on the medial [inside] aspect of the right leg would break out. These ulcerations occurred at the points where incisions had been made at the time of employee's first operation. She returned to treatment under Doctor Gage and in April 1963 underwent another operation on her right leg. This time the employee again lost four weeks of work but on May 17, 1963, was discharged and returned to work.

" This employee does have a disability. It is probable that she will not be able to undertake work which will require that she be on her feet for extended lengths of time. However, this condition is not caused or related to the accidental injury that she suffered on March 17, 1961, but it is due to a pre-existing and continuing condition of varicosity.

" The second operation that the employee underwent and the time lost as a result thereof is traceable to the original accident.

Had the doctor not had to operate to heal the burn wound, the incision on the medial aspect of the leg would not have had to be made and no ulceration would have developed.

"The master finds, that the employee received a total temporary disability during the two periods of four weeks each at the time of her operations and that the accidental injury of March 17, 1961, was a contributing cause of such disability.

"The master recommends:

"1. That it be determined that the employee is entitled to the medical treatments received from June 30, 1961, to May 17, 1963.

"2. That it be determined that the employee is entitled to weekly disability benefit in the sum of 66 2/3 percent of $45.20 for a period of eight weeks."

"It appears to be the law everywhere that where accidental personal injury, under a workmen's compensation act, aggravates a pre-existing physical condition, the injured employe is nevertheless entitled to compensation." *O'Brien* v. *Manchester Yarn Mills,* 95 N. H. 118, 120; *Walter* v. *Hagianis,* 97 N. H. 314, 317. It is also well established that where an industrial accidental injury precipitates disability from a latent prior condition the entire disability is compensable and our law (RSA ch. 281) does not require that weight be given to the relative contribution of the accident and of the pre-existing condition to the final disability. *O'Brien* v. *Manchester Yarn Mills, supra; Armstrong* v. *Lake Tarleton Hotel,* 103 N. H. 450, 455; *Belth* v. *Anthony Ferrante & Son,* 47 N. J. 38; *Marsigli's Estate* v. *Granite City Auto Sales,* 124 Vt. 95; 2 Larson, Workmen's Compensation Law, *s.* 59.20, *p.* 56.

The evidence is uncontradicted that, except for periods of unemployment caused by pregnancies or the labor market, plaintiff had been working steadily, up to the time she incurred her burn, at jobs which required her to be on her feet for long periods such as being a waitress, and the operator of drill presses, thread rollers, a drive press and a power press. These jobs were performed during the time plaintiff had a history of phlebitis and varicose veins.

Dr. Gage testified that plaintiff's underlying condition of post-phlebetic syndrone with incompetent blood vessels of varicose veins would not bother her too much unless "something happens" such as this burn, to precipitate matters. When asked if

plaintiff's leg is very apt to have ulcers because of her disease and not caused by trauma, the doctor answered "I would say not now. I would say in many years now this is possible. I would not say now." Dr. Nydegger, who testified for the defendant, said that he could not predict when a breaking down such as that caused by the burn would have taken place from the phlebitis and varicosity. "She might have had difficulty in one year, five years. Nobody can predict."

Both of these doctors, who were the only medical witnesses, agreed that the burn accidentally received by the plaintiff out of and in the course of her employment caused the non-healing ulceration on the outside of her right leg which necessitated the first operation. These doctors also agreed that, to successfully perform this operation, Dr. Gage properly made an incision on the inside of plaintiff's leg to ligate and strip blood vessels to improve the blood circulation. They also agreed that the second operation to cure the ulcer which developed at the site of this incision was also occasioned by the burn which she suffered on her job.

Furthermore both doctors agreed that, since the burn and the operations which were necessary to cure the ulcer which it produced, plaintiff is disabled from working on jobs which require prolonged standing such as those she previously worked at before her accident for a number of years. Dr. Gage testified that plaintiff has a 100% disability if the job requires plaintiff to stand eight hours a day for 5 days a week, and a 50% disability for a straight sitting job with no leg movement. Dr. Nydegger testified that plaintiff does have a permanent disability and should be limited in her occupations and stay off her feet. He further testified that "her difficulties are on the basis of her vascular difficulties in the leg and are not related to her burn injury."

There was testimony from a counselor in the State Department of Employment that, in the area of plaintiff's residence, there are more jobs which require standing than there are which can be performed while sitting. He further testified that in his opinion nearly two-thirds of the jobs for women in the area would require mostly standing.

On this evidence the master properly found that this "employee does have a disability. It is probable that she will not be able to undertake work which will require that she be on her

feet for extended lengths of time." The master also properly found that because of her previous phlebitis and varicose veins the burn which she received in her employment caused the non-healing ulcer which necessitated the two operations which she sustained. In view of the testimony of both doctors that the burn precipitated the disability and but for the burn she would probably not be disabled now, and probably would not have been for some years to come, the master erroneously attributed her disability at the time of trial solely to her "pre-existing and continuing condition of varicosity" in accordance with part of the testimony of Dr. Nydegger.

Compensation under our statute is awarded for an injury which is a hazard of the employment acting on a particular employee in his condition of health. *Walter* v. *Hagianis,* 97 N. H. 314; *O'Brien* v. *Manchester Yarn Mills,* 95 N. H. 118, 120. The employer takes an employee as he finds her and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal healthy person. If that injury is the proximate cause of her disability recovery may be had for the full extent of the impairment regardless of pre-existing weakness or disease. *Walter* v. *Hagianis, supra; Hamilton* v. *Keller,* 11 Ohio App. 2d 121; *Belth* v. *Anthony Ferrante & Son,* 47 N. J. 38; *Marsigli's Estate* v. *Granite City Auto Sales,* 124 Vt. 95; 99 C.J.S., Workmen's Compensation, *s.* 170, *p.* 586. See *Abel* v. *Yoken,* 104 N. H. 119.

Since plaintiff's present disability was precipitated by a work-connected injury and there was evidence from which it could be found that she suffered a loss of earning capacity therefrom there must be a new trial to measure such loss. *Robbins* v. *Perini Corporation,* 107 N. H. 290, 292; *Armstrong* v. *Lake Tarleton Hotel,* 103 N. H. 450; 2 Larson, Workmen's Compensation Law, *s.* 57.00, *p.* 1. This issue was properly raised by plaintiff's motion to set aside the verdict. See *Kacavisti* v. *Sprague Electric Co.,* 102 N. H. 266, 268.

*Remanded.*

GRIFFITH, J., did not sit; the others concurred.