Strafford
No. 7871

JAMES SERVETAS

v.

KING CHEVROLET–OLDSMOBILE CO., INC.

December 30, 1977

*James Koromilas,* of Dover, by brief and orally, for the plaintiff.

*Devine, Millimet, Stahl & Branch,* of Manchester (*Mr. Richard E. Galway, Jr.* orally), for the defendant.

LOUGHLIN, J. (By special assignment pursuant to RSA 490:3). The issues in this case are whether there was evidence presented at trial which would support the trial court's finding that plaintiff is temporarily totally disabled under RSA 281:23 (Supp. 1975) and whether the evidence presented supports the trial court's finding that plaintiff has a loss of earning capacity.

The plaintiff is a former employee of King Chevrolet-Oldsmobile who suffered a below-the-knee amputation as a result of a motorcycle accident in 1950. While employed as a salesman for the defendant from April to August 1974, the plaintiff claimed to have suffered an injury to the stump of his leg due to prolonged standing as a result of having to work excessive hours. He commenced receiving disability payments and, in accordance with RSA 281:21-b (Supp. 1975), attended a rehabilitative course to update his skills as an accountant-bookkeeper. Plaintiff was graduated from the Bentley School of Accounting and Finance in 1953 and had worked for three years thereafter as an accountant-bookkeeper. It does not appear that the plaintiff either has attempted or is qualified to be certified or licensed as an accountant as provided in RSA 309-A:1 *et seq.* (Supp. 1975).

On January 12, 1976, the deputy labor commissioner ruled that plaintiff was no longer entitled to continuing disability benefits because his disability was no longer causally related to his employment. The court ruled at a trial de novo, RSA 281:37 (Supp. 1975), that the plaintiff was temporarily totally disabled and entitled to continuing payments. Defendant's exceptions to this ruling were reserved and transferred by *Cann, J.* On motion of the defendant, further payments were stayed pending determination by this court of the issues reserved. Defendant contends that the evidence compels a finding that the plaintiff is not temporarily totally disabled. RSA 281:23 (Supp. 1975). This contention cannot be accepted.

There was competent evidence in the record to enable the trial court to find, as it did, that the stump was injured by standing on his feet as long as twelve hours during a workday. Where an accidental injury aggravates a preexisting condition the injured employee is entitled to compensation. *Strahan v. Hunter Hosiery Co.*, 109 N.H. 96, 98, 244 A.2d 432, 434 (1968); *Walter v. Hagianis*, 97 N.H. 314, 317, 87 A.2d 154, 157 (1952).

At the time of his injury in 1974, the plaintiff already had certain physical and mental troubles associated with his amputation. His fear of any surgical procedures to correct the irritation of the stump, therefore, predated the accident. The trial court found that as a result of this mental handicap at the time of and prior to the stump injury (and also presently) the plaintiff is unable to undergo surgery to remove certain hard nodule growths on the right side of the stump. Doctor Demopoulos, plaintiff's personal doctor, testified that due to the severe psychiatric problem, he would not operate because the added trauma of surgery could upset the plaintiff's mental balance. *Vallee v. Company*, 89 N.H. 285, 287, 197 A. 697, 698 (1938).

"[P]hysical defects or ailments existing prior to the accident as well as any which may become manifest thereafter become material factors in determining plaintiff's ability or inability to work at any gainful occupation if 'the accident affected them, either in immediate connection or in the course of causative sequence which could be found to have direct and more than remote relation to the accident.'" *Armstrong v. Lake Tarleton Hotel*, 103 N.H. 450, 454, 174 A.2d 410, 414 (1961).

■ Plaintiff's refusal to submit to an operation designed to remove the cause of the disability has to be measured against the following standard. "[W]as the employee's conduct in refusing to submit to the operation so arbitrary and unreasonable that the continued disability could be said to have resulted from his own misconduct." *Davidson Rubber Co. v. Matherson*, 111 N.H. 272, 275, 281 A.2d 50, 52 (1971). The conduct of the plaintiff in this case was not at time of trial so unreasonable or arbitrary as to compel the trial court to find that the plaintiff's continuing disability is in effect self-inflicted. This court has held that this determination is generally one of fact, *Cate v. Perkins Machine Co.*, 102 N.H. 391, 394, 157 A.2d 778, 780 (1960), and is therefore not reversible where, as here, there is any evidence to warrant such a finding.

■■ The court did find that plaintiff could perform part-time work not of a standing nature. However, a finding that a person may be able to do part-time work does not necessarily rule out a finding of temporary total disability nor require that it always be reduced to partial disability under RSA 281:25 (Supp. 1975). 2 A. Larson, The Law of Workmen's Compensation § 57.50 (1976). If

an employee cannot perform services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, he may well be classified as totally disabled. *Armstrong v. Lake Tarleton Hotel*, 103 N.H. 450, 453, 174 A.2d 410, 413 (1961).

 At the hearing, Miss Ola Durnin, an employee for the department of employment security for thirty-two years and a manager of a district office, was produced by the defendant. When asked a question pertaining to the earning abilities of an individual in the position of the plaintiff she indicated that as a bookkeeper the plaintiff would earn between $150 and $200 per week. Even though this testimony went unchallenged, the earning capacity of the plaintiff cannot be determined solely on the basis of this direct evidence, for this determination requires the exercise of judicial discretion within the limits established by the statute. *Dunbar Fuel Co. v. Cassidy*, 100 N.H. 397, 403, 128 A.2d 904, 909 (1959). It is also true that the plaintiff did not introduce direct evidence that he had sought employment and had been rejected, but the trial court could, nonetheless, fairly estimate the loss of the plaintiff's capacity to obtain gainful employment in any particular occupation as a result of the injury by looking to plaintiff's prior work history, education and training, and general physical and mental condition existing at the time of the hearing. *Peak v. Company*, 87 N.H. 350, 179 A.2d 355 (1935). *But see Knight Broadcasting Co. v. Kane*, 109 N.H. 565, 258 A.2d 355 (1969).

██ The trial court in exercising its discretion could find on the facts of this case that plaintiff's earning capacity was affected to the extent necessary to support a finding of temporary total disability rather than partial disability, even though it also found that plaintiff was capable of very short periods of part-time work. *Kacavisti v. Sprague Electric Co.*, 102 N.H. 266, 155 A.2d 183 (1959).

*Exceptions overruled.*

BATCHELDER, J., sat by special assignment pursuant to RSA 490:3; all concurred.