534

Original
No. 93-670

PETITION OF ROBERT CROTEAU
(New Hampshire Department of Labor)

May 26, 1995

*Buckley and Zopf,* of Claremont (*R. Wells Chandler* on the brief and orally), for the petitioner.

*Sulloway & Hollis,* of Concord (*James E. Owers* on the brief and orally), for the respondents, Mortenson & Bailey Construction Company and Aetna Casualty & Surety Company.

BROCK, C.J. The petitioner, Robert Croteau, seeks a writ of certiorari to review the decision of the New Hampshire Department of Labor granting in part and denying in part his claim for a permanent partial impairment award. We affirm in part, vacate in part, and remand.

The petitioner fell from a scaffolding while working in November 1988. He currently receives temporary total disability benefits. The petitioner sought a permanent impairment award based on injuries to his shoulders, wrists, and neck pursuant to RSA 281-A:32 (Supp. 1994). After a hearing was held at the department of labor, the hearing officer granted the petitioner's claim for a permanent impairment award for his right shoulder, but denied the petitioner's remaining claims for permanent impairment awards based on injuries to his left shoulder and neck, and on the bilateral carpal tunnel syndrome (CTS) in his wrists, finding them not to be causally connected to his work-related injury.

The petitioner filed a timely motion for reconsideration, which was denied. This petition for certiorari followed. Because permanent impairment decisions of the department of labor before January 1, 1994, were final, RSA 281-A:32, XII (Supp. 1993), *amended by* Laws

1993, ch. 226, certiorari is the petitioner's proper remedy. *Petition of Gunzel,* 124 N.H. 495, 498, 471 A.2d 1189, 1190 (1984).

 We review the department's decision to determine "whether the commissioner acted illegally with respect to jurisdiction, authority or observance of the law, whereby he arrived at a conclusion which could not legally or reasonably be made, or . . . abused his discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Gunzel,* 124 N.H. at 498, 471 A.2d at 1190 (quotation omitted). We will not reverse a hearing officer's findings of fact or decisions based upon such findings if they are supported by competent evidence in the record, "even if contrary testimony in the record would support another result." *Petition of Blake,* 137 N.H. 43, 49, 623 A.2d 741, 745 (1993).

In September 1988, the petitioner first was treated for symptoms of CTS in both wrists; his symptoms were more severe in his right wrist. In November 1988, the petitioner fell approximately eight feet from scaffolding at a job site, landing face down on the ground. He immediately reported pain in his right shoulder and was seen in the emergency room of a local hospital.

The petitioner had suffered no difficulty with his right or left shoulder prior to this accident. He underwent surgery for a torn rotator cuff in his right shoulder in January 1989. There are several references to complaints indicating carpal tunnel problems in his physician's treatment notes before and after the surgery. The petitioner had another surgical procedure on his right shoulder in September 1989. During physical therapy for his right shoulder injury and CTS, the petitioner injured his left shoulder and has complained of pain and limited range of movement in that shoulder since that time.

The petitioner's complaint of neck pain is first reflected in medical records in 1991, although he contends that he has had symptoms of a cervical injury since his fall in 1988. He has been diagnosed with a cervical prolapsed disc.

The department concluded that the petitioner was entitled to a permanent impairment award based on injury to his right shoulder only. The hearing officer stated that the CTS in the petitioner's right wrist "pre-existed the injury in question" and that the syndrome in his left wrist "developed from favoring the right hand, and as the right carpal tunnel symptoms are not related to the injury of November 28, 1988, the symptoms in the left hand cannot be so[] related." The hearing officer determined that the petitioner's neck injury was "a degenerative condition, with little evidence to connect this condition with a single traumatic incident" and determined that the cervical complaints could not "be related to the incident of November 28, 1988." Finally, the hearing officer concluded that the injury the petitioner sustained to his left shoulder during the course of physical

therapy for his right shoulder had not reached any point of maximum medical improvement, and therefore declined to make a permanent impairment determination on the basis of that injury.

## I. Right Shoulder

The hearing officer found the testimony of one particular examining physician, Dr. Cusson, to be "realistic and convincing" and found that the petitioner suffered a sixteen percent permanent impairment to his right shoulder based upon Dr. Cusson's evaluation. The petitioner argues that the hearing officer acted unreasonably and arbitrarily when he chose to rely on these findings. We disagree. Other examining physicians made similar recommendations regarding the petitioner's right shoulder. The hearing officer's decision is supported by competent evidence in the record, even though contrary testimony in the record might support another result. *Petition of Blake,* 137 N.H. at 49, 623 A.2d at 745. Accordingly, we affirm that portion of the department's decision awarding a sixteen percent permanent impairment based on the petitioner's right shoulder injury.

## II. Left Shoulder

Several physicians who had examined the petitioner noted that they were unable to assign any permanent impairment to the left shoulder. The hearing officer determined that the left shoulder injury sustained during the course of treatment for the right shoulder injury has yet to reach a maximum medical improvement, and therefore declined to make a permanent impairment award based on that injury. Because this conclusion also is supported by competent evidence in the record, we affirm this part of the department's decision. *See id.* The petitioner may request another hearing after his left shoulder has reached a point of maximum medical improvement. *See Petition of Markievitz,* 135 N.H. 455, 457–58, 606 A.2d 800, 802 (1992).

## III. Carpal Tunnel Syndrome

The hearing officer concluded that the petitioner's CTS in his right hand predated the traumatic fall in 1988 and, therefore, was not properly the subject of a permanent impairment award. The hearing officer then stated that the CTS in the petitioner's left hand "developed from favoring the right hand, and as the right carpal tunnel symptoms are not related to the injury of November 28, 1988, the symptoms in the left hand cannot be so[ ] related."

The hearing officer was primarily concerned with the effect of the 1988 fall, rather than with an overall evaluation of the petitioner's impairment. In his denial of the petitioner's motion for reconsideration, the officer stated that the hearing "was based upon

injuries specifically suffered in a slip and fall accident on November 28, 1988" and that "an award under RSA 281-A:32 must, by all logic, relate to a specific, work-related condition, and not any degenerative condition which the claimant may have developed in his body."

▪ An injury for purposes of our workers' compensation scheme is an "accidental injury . . . arising out of and in the course of employment." RSA 281-A:2, XI (Supp. 1994). We have stated that an accidental injury need not have been traumatic or dramatic and that it need not have initiated a disabling condition, if it rendered a preexisting one disabling. *Walter v. Hagianis*, 97 N.H. 314, 317, 87 A.2d 154, 157 (1952). Employers assume the risk and potential consequences of hiring an employee who has a preexisting disease, defect, or disability. *Strahan v. Hunter Hosiery Co.*, 109 N.H. 96, 100, 244 A.2d 432, 435 (1968). If a work-related, accidental injury aggravates or reactivates a previously dormant or nondisabling condition or disease, the resulting disability is compensable. *Servetas v. King Chevrolet-Oldsmobile Co.*, 117 N.H. 1061, 1063, 381 A.2d 750, 751 (1977); *Bolduc v. Company*, 96 N.H. 235, 237–38, 73 A.2d 115, 117–18 (1950). We conclude that the department acted contrary to law when it considered only the effects of a particular accident in evaluating the petitioner's claim for a permanent impairment award.

▪ The parties do not dispute that the petitioner suffered from CTS symptoms prior to the work-related fall in 1988. They do, however, dispute whether the CTS was work-related. At the hearing, the petitioner presented evidence that the CTS in his right wrist, treated before the fall, was the result of repetitive movement consistent with his occupation, carpentry. On the other hand, one of his physicians noted that the pre-fall CTS discomfort did not appear to be "from his work." It is the province of the department to find facts. *Petition of Blake*, 137 N.H. at 49, 623 A.2d at 745. We remand for a determination whether the CTS in the petitioner's right wrist was work-related and therefore suited for a permanent impairment award.

The petitioner suffered from some CTS symptoms in his left wrist prior to the fall. His symptoms became much more severe, however, after the traumatic injury to his right shoulder. In its decision, the department attributed the CTS in the petitioner's left wrist to "favoring the right hand" and found it to be not work-related based on its finding that the right CTS was not work-related. Because we vacate the department's decision regarding the right CTS, we also vacate the decision regarding the left wrist. At the rehearing, the hearing officer should consider, even assuming that the right CTS was not work-related, whether the only reason the petitioner would "favor" his right hand would be the CTS in his right wrist: the petitioner suffered

a traumatic injury to his right shoulder that caused a torn rotator cuff, for which he underwent two surgical procedures and wore a sling for several months.

 "The distinctive feature of the compensation system . . . is that its awards (apart from medical benefits) are made not for physical injury as such, but for disability produced by such injury." *Desrosiers v. Company,* 98 N.H. 424, 426, 101 A.2d 775, 777 (1953). An impairment is compensable under our scheme of workers' compensation if it is the direct and natural result of a compensable primary injury. *Servetas,* 117 N.H. at 1063, 381 A.2d at 751. The accidental quality of such a subsequent injury may consist of an unexpected effect as well as an unexpected cause. *New Hampshire Supply Co. v. Steinberg,* 119 N.H. 223, 226, 400 A.2d 1163, 1165 (1979). The causal sequence in such a case may be "more indirect or complex, but as long as the causal connection is in fact present the compensability of the subsequent condition is beyond question." 1 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 13.11(b), at 3-523 to 3-524 (1993); *see also Crocker v. Eastland Woolen Mill, Inc.,* 392 A.2d 32, 34 (Me. 1978) (back injury compensable under workers' compensation scheme where injury to back results from use of crutches necessitated by work-related foot injury); *Matter of Compensation of Eber,* 636 P.2d 1007, 1008 (Or. Ct. App. 1981) (claimant's work-related injury to his right knee exacerbated the preexisting condition in his left knee; insurer responsible for both conditions).

Even if the petitioner suffered from some CTS difficulty in his left wrist before the 1988 fall, aggravation of that condition by a work-related injury would be compensable. *See Servetas,* 117 N.H. at 1063, 381 A.2d at 751. Accordingly, we vacate the department's determination that the petitioner's left wrist CTS was not work-related, and remand the matter for a further evaluation of the relationship between the left wrist CTS and the right shoulder injury suffered as a result of the fall in 1988. If, on remand, the right wrist CTS is determined to have been caused or aggravated by the petitioner's work, the department should also consider the contribution of this injury to the left wrist CTS.

## IV. Cervical Disc

 The department denied the petitioner's claim for a permanent impairment award based on the prolapsed disc in his neck. After noting that there was no evidence of specific complaints about the petitioner's neck for more than two years after the traumatic fall, the hearing officer concluded that this problem was the result of a degenerative condition and that there was "little evidence to connect this condition with a single traumatic incident." As we have stated, the aggravation of a degenerative condition would be compensable if the aggravation were work-related. *See id.* Some evidence was presented at the hearing that suggests the neck

injury may be an indirect consequence of the 1988 fall. Because it is apparent that the department only considered the direct effects of the 1988 fall, we vacate its decision with regard to the petitioner's prolapsed cervical disc. We remand this matter to the department for a determination whether the neck injury was work-related.

*Affirmed in part; vacated in part; remanded.*

All concurred.