Rockingham
No. 80-117

CHARLES F. ROGERS

v.

TOWN OF Newton *& a.*

August 10, 1981

*Craig, Wenners, Craig & McDowell,* of Manchester (*Vincent A. Wenners, Jr.,* on the brief and orally), for the plaintiff.

*Sulloway, Hollis & Soden,* of Concord (*John W. Mitchell* on the brief and orally), for the defendants.

BOIS, J. This is an appeal by the plaintiff-claimant, Charles F. Rogers, from the Superior Court's (*Randall,* J.) denial of workmen's compensation benefits under RSA ch. 281. The plaintiff claimed he was entitled to benefits because of disability resulting from a heart attack that he suffered on May 16, 1977, while on duty as a volunteer fireman for the defendant, the Town of Newton. After a hearing, the deputy labor commissioner denied the plaintiff's claim and found:

> "Based upon the evidence presented, it is determined that the claimant had a history of complaints consistent with coronary artery disease. Even going on the basis of the presumptive clause and conceding that the heart attack arose out of and in the course of his employment, the problems he had thereafter relative to surgery would

not be as a result of the myocardial infarction he had on May 17, 1977. Therefore, it is determined that the claimant is not entitled to any further compensation payments beyond the date of this decision.

"It is further ruled that the coronary artery bypass operation . . . was not as a result of the myocardial infarction he suffered on May 17, 1977 and the carrier is not responsible for the medical bills related to the hospitalization and operation."

Pursuant to RSA 281:37, the plaintiff appealed to the superior court, which, after a hearing, also denied his claim for benefits. We affirm.

In April 1977, the plaintiff, a self-employed electronics engineer, joined the Town of Newton volunteer fire department. Prior to the May 16, 1977, incident, he had responded to five calls. On May 16, 1977, at approximately 11:30 p.m. the plaintiff received a "priority number 2 alarm," which indicated a fire that was a threat to life or property. He got out of bed, dressed, and drove to the fire station. Upon arrival, he discovered that the fire crew had already responded to the fire. The plaintiff remained at the station. While there he ran out some hose, but did not, according to his testimony, perform any "extraordinarily physically demanding" activities. He further testified that he felt a pain in the chest when he arrived at the station. He remained at the station, however, until the fire was brought under control and the crew returned to the station. Continuing to experience chest pains the following day, he went to the nearest hospital.

The plaintiff was treated at the hospital by Dr. Robert H. Creech for two weeks. The doctor testified that the plaintiff had suffered a myocardial infarction while at the fire station on May 16, 1977. After his discharge on May 31, 1977, the plaintiff developed angina and was referred to a specialist for selective coronary angiography. The angiography indicated that the plaintiff required a vein bypass operation. Such an operation was performed in September of 1977.

The court found that all of the doctors attending to the plaintiff had concluded that he was suffering from a severe condition of atherosclerosis, a condition that would take from five to fifteen years to develop. Furthermore, the doctors agreed that the plaintiff's family history included factors supportive of such a condition. Regarding the plaintiff's personal medical history prior to the May 16, 1977 heart attack, the court found that the plaintiff had been admitted to the Veteran's Administration Hospital in Manchester on three occasions in 1976 complaining of chest pains. There was

evidence that at least one of those admissions was because of a heart attack.

The Court (*Randall*, J.) ultimately concluded that:

"1. The plaintiff was suffering from a severe condition of atherosclerosis.

2. The plaintiff's activities in responding to the alarm and while at the fire station on May 16, 1977 did not create any stress or strain greater than would have been encountered in normal non-employment life.

3. The myocardial infarction suffered by the plaintiff on May 16, 1977 did not cause or contribute to the bypass operation in September, 1977."

■ The plaintiff asserts that the only issue before us is the applicability to the facts at bar of the legal causation test enunciated in *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 400 A.2d 1163 (1979). He argues that the holding in *Steinberg* should apply only to heart attack cases involving chronic or long-term work-related stress, and should not extend to heart attack cases in which sudden, acute or traumatic stress or exertion is involved. Although *Steinberg* dealt with a heart attack allegedly caused by protracted work-related psychological stress, *see New Hampshire Supply Co. v. Steinberg*, 121 N.H. 506, 433 A.2d 1247 (1981), the test we enunciated in the first *Steinberg* decision was not expressly limited to one particular type of stress or exertion. Specifically, we stated that "the claimants had to prove both medical and legal causation." *New Hampshire Supply Co. v. Steinberg*, 119 N.H. at 230, 400 A.2d at 1168.

■ Regarding the test for legal causation, we stated in *Steinberg:*

"The test to be used depends upon the previous health of the employee. . . . Where there is a prior weakness in the form of a previously weakened or diseased heart, then the employment must contribute something substantial to the heart attack. . . . That is, the employment-connected stress or strain must be greater than is encountered in normal nonemployment life. Thus, heart attacks that actually result from work-related stress are distinguished from those that occur at work merely as a result of natural physiological process."

119 N.H. at 231, 400 A.2d at 1168 (citations omitted).

■ In determining the "previous health of the employee," the

court in this case found that all of the medical evidence supported a finding that the claimant "was suffering from a severe condition of atherosclerosis." Having found the existence of a "previously weakened or diseased heart," the court then properly inquired into whether the claimant's employment duties on the night of May 16, 1977, contributed something substantial to the heart attack and concluded that they did not.

> "[W]hen, as in this case, there is competent medical evidence to support a determination that the . . . [claimant's] employment activities were not causally related to his heart attack . . . , a reviewing court may not substitute its judgment for that of the trial court . . . ."

*New Hampshire Supply Co. v. Steinberg*, 121 N.H. at 509, 433 A.2d at 1249. Accordingly, because the record supports the trial court's inability to find legal causation under the *Steinberg* test, we hold that the court properly denied benefits for the claimant. *See Bothwick v. State*, 119 N.H. 583, 587, 406 A.2d 462, 465 (1979).

■ The plaintiff also argues that even if the *Steinberg* ruling applies and the activities are not greater than those encountered in normal nonemployment life, the presumption established in RSA 281:2 V-a would constitute sufficient basis to "contribute something substantial" to the heart attack under *Steinberg*. RSA 281:2 V-a states in pertinent part:

> "[T]here shall exist a prima facie presumption that heart or lung disease in a firefighter, whether he is a regular, call, volunteer or retired member of a fire department, is occupationally related; provided, however, that a call or volunteer firefighter shall have the benefit of this prima facie presumption only if there is on record reasonable medical evidence that he was free of such disease at the beginning of his employment."

Because the record amply supports the conclusion that Rogers, a volunteer fireman, had a history of severe atherosclerosis at the time he became a fireman and at the time of the disabling attack, the statutory presumption set forth in RSA 281:2 V-a does not apply.

■ The court's finding that the May 16, 1977 heart attack "did not cause or contribute to the bypass operation in September, 1977" was proper, given the pre-existing infirmities of the claimant.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.