Rockingham
No. 81-155

MELVIN ROWE

v.

CITY OF PORTSMOUTH

February 19, 1982

*Flynn, McGuirk & Blanchard*, of Portsmouth (*John P. McGee, Jr.*, on the brief and orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch*, of Manchester (*Lee C. Nyquist* on the brief and orally), for the defendant.

DOUGLAS, J. This workmen's compensation appeal raises the issue of whether the plaintiff, Melvin Rowe, presently is suffering from any cardiac disability that is causally related to an incident

that occurred on March 28, 1979, while he was in the employ of the defendant, the City of Portsmouth.

Rowe suffered a work-related "myocardial episode" on March 28, 1979, during the course of his employment as a mechanic for the City of Portsmouth. Prior to the onset of this episode, Mr. Rowe suffered an "underlying arteriosclerosis of coronary arteries." Rowe admitted himself to the Portsmouth Hospital while suffering the episode, and he was hospitalized from March 28, 1979, until April 11, 1979, a period of two weeks.

The defendant paid for the plaintiff's hospitalization and paid him workmen's compensation pursuant to RSA 281:23. In the fall of 1979, the defendant petitioned the commissioner of labor to terminate workmen's compensation benefits. After a hearing at which the plaintiff appeared *pro se*, the commissioner terminated the plaintiff's compensation benefits. Following this determination, the plaintiff sought counsel and appealed the ruling of the commissioner to the superior court.

At the commencement of the hearing before the Master (*Charles T. Gallagher*, Esq.), the defendant conceded that the plaintiff's work on March 27 and 28, 1979, did precipitate a myocardial episode of chest discomfort which required hospitalization. The defendant further conceded that the plaintiff was disabled for an indeterminate length of time coincident with at least his hospitalization. The defendant, however, contended that the plaintiff, at some point *subsequent* to his hospitalization, had ceased to be disabled on account of his myocardial episode of March 27 and 28, 1979. The master's recommendation that the appeal be denied was approved by *Mullavey*, J., and this appeal ensued.

Rowe was discharged from the Portsmouth Hospital with a diagnosis of "acute anteroseptal subendocardial infarction." The plaintiff's expert, Dr. Lawrence A. Baker, concurred in the discharge diagnosis but Dr. Jeremy Handelman, a physician with a sub-specialty in the practice of cardiology who treated Rowe subsequent to his myocardial episode, strongly disagreed with the discharge diagnosis and testified, "I will say [Mr. Rowe] absolutely did not have a myocardial infarction."

The City of Portsmouth's medical expert, Dr. Elliot L. Sagall, a certified specialist in internal medicine and cardiology, testified that Rowe suffered from "transient myocardial ischemia," that Rowe had not sufferd a myocardial infarction and suffered no permanent damage to his heart, but rather was suffering from progressive coronary artery heart disease that was not causally related to his employment with the City of Portsmouth or to the myocardial episode of March 28, 1979. Dr. Sagall testified about

numerous widely recognized medical tests that had been performed on Mr. Rowe and concluded that these tests demonstrated a medical probability that Mr. Rowe had not suffered a heart attack.

At the close of the evidence, the master was confronted with the classic dilemma that usually faces all triers of fact: simply stated, he had to decide which experts to rely upon. The master summarized his problem:

> "The expert medical testimony presented in this case is in sharp conflict. Dr. Baker holds the opinion that the plaintiff suffered a myocardial infarction on March 28, 1979. The opinion is based largely upon the plaintiff's medical history. Dr. Sagall, whose credentials are equal to those of Dr. Baker, is of the opinion that there was no injury because all of the tests made at the hospital and after discharge are essentially negative."

The master chose to lend the most credence to the expert medical opinions of Dr. Handelman and Dr. Sagall, and ruled in favor of the City of Portsmouth, holding that the plaintiff had not carried his burden of proof to establish either that he had suffered a myocardial infarction on March 28, 1979, or that he continued to suffer from any disability that was causally related to the March 28, 1979, incident. The master was not convinced that Rowe's disability was related to the incident and not to his pre-existing arteriosclerotic condition, a condition that was verified by all three medical expert witnesses.

The plaintiff asserts that the evidence did not warrant the master's ruling. It is clear that heart-related conditions can result in compensable injuries under RSA ch. 281. *See New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 227, 400 A.2d 1163, 1166 (1979); *Couture v. Mammoth Groceries Inc.*, 116 N.H. 181, 183, 355 A.2d 421, 422 (1976); *Jackson v. Emile J. Legere, Inc.*, 110 N.H. 252, 254, 265 A.2d 18, 20 (1970). However, when competent expert medical evidence exists in the record to support the trier of fact's determination, it is not ordinarily reversible on appeal to this Court, *Rogers v. Town of Newton*, 121 N.H. 702, 706, 433 A.2d 1303, 1305 (1981); *New Hampshire Supply Co. v. Steinberg*, 121 N.H. 506, 509, 433 A.2d 1247, 1249 (1981), "even though contrary testimony received would have supported a different result." *New Hampshire Supply Co. v. Steinberg*, 121 N.H. at 509, 433 A.2d at 1249.

Having reviewed the record, we conclude that the master's finding must stand.

*Affirmed.*

All concurred.