Original
No. 91-518

## PETITION OF PATRICIA J. BLAKE
## (New Hampshire Department of Labor)

April 7, 1993

*Taylor, Keane, Blanchard, Lyons & Watson, P.A.*, of Portsmouth (*Thomas R. Watson* and *Christopher W. Keenan* on the brief, and *Mr. Keenan* orally), for the petitioner.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Jeffrey H. Karlin* on the brief and orally), for Laconia Shoe Company, Inc. and Liberty Mutual Insurance Company.

THAYER, J.   The petitioner, Patricia J. Blake, seeks a writ of certiorari to review the decision of the New Hampshire Department of Labor granting her a whole person permanent impairment award of eight percent. She argues that the hearings officer erred by admitting a medical report into evidence and rendering a decision that was illegal, unreasonable, arbitrary and capricious, as well as an abuse of discretion. We affirm.

The petitioner worked for Laconia Shoe Company, Inc., as a shoe stitcher for eight years. Over the course of her employment, she developed a repetitive motion injury in her hand. In 1987, the petitioner began treatment with Dr. Daniel C. Wing. Dr. Wing conducted

testing and determined that the petitioner was suffering from thoracic outlet syndrome, accompanied by myofascial syndrome or fibrositis and chronic pain syndrome. On or about June 26, 1990, Dr. Wing determined that she had reached a medical endpoint, *i.e.*, the point at which further medical treatment was unlikely to change her condition. Dr. Wing assessed a "whole person permanent impairment" (a scale which measures the degree of permanent impairment) of ninety-one percent, based on the sixty percent impairment of the right upper extremity and thirty-one percent impairment of the left upper extremity. Based on Dr. Wing's impairment evaluation, the petitioner requested a hearing to determine the permanent impairment award.

Dr. Wing's permanent impairment report was sent to the employer's insurance carrier, Liberty Mutual Insurance Company (Liberty Mutual). Liberty Mutual requested an independent medical examination (IME) of the petitioner. On June 25, 1991, Dr. Kenneth O'Neil and a staff occupational therapist conducted a "work capacity evaluation" of the petitioner. Dr. O'Neil diagnosed post carpal tunnel syndrome and a possible median nerve motor branch injury to the right hand. On July 8, 1991, Dr. O'Neil sent a copy of the work capacity evaluation (IME report) to Liberty Mutual along with a lengthy cover letter explaining the results and containing his conclusions and recommendations. On July 19, 1991, Dr. O'Neil sent Liberty Mutual a one-page "impairment report" that contained his calculation of five percent impairment of the right upper extremity and three percent impairment of the left upper extremity, resulting in eight percent impairment of the whole person. Liberty Mutual sent a copy of Dr. O'Neil's impairment report to the labor department on August 23, 1991.

On August 24, 1991, Liberty Mutual sent a letter to the petitioner's attorney enclosing a copy of the IME report and stating that Dr. O'Neil had computed whole person impairment to be eight percent. In reference to the impairment figure, Liberty Mutual's counsel explained that he was "in the process of sending the [labor department] a copy of Dr. O'Neil's report along with the necessary paperwork to settle this issue," since Dr. Wing's ninety-one percent impairment figure did "not even come close" to Dr. O'Neil's impairment figure. The petitioner's counsel claims that he never received a copy of the one-page impairment report.

On October 2, 1991, when the petitioner arrived at the labor department with her attorney for the hearing, the hearings officer made available the petitioner's complete medical report. Dr. Wing

and counsel for the petitioner examined Dr. O'Neil's impairment report. During the hearing, petitioner's counsel objected to the introduction and consideration of the impairment report arguing, in part, that it had never been disclosed to him or the petitioner, and that he was "not aware of any evaluation done by Dr. O'Neil[]." The hearings officer admitted the impairment report, explaining that the impairment report had been in the department's file for two months prior to the hearing and, further, that there had been a conversation between petitioner's counsel's office and the labor department regarding the eight percent impairment figure contained in the report. The hearings officer allowed petitioner's counsel to examine her expert witness, Dr. Wing, with respect to that impairment report. In addition, the hearings officer held the record open for ten days after the hearing to allow the parties to submit closing arguments. *See* N.H. ADMIN. RULES, Lab 204.06(f). On October 17, 1991, the hearings officer awarded the petitioner a whole person permanent impairment award of eight percent.

■■ Permanent impairment awards of the labor department are final under RSA 281-A:32, XII (Supp. 1992). Accordingly, certiorari is the proper remedy for review. *Petition of Markievitz*, 135 N.H. 455, 456, 606 A.2d 800, 801 (1992). We have consistently held that on certiorari, we will not make *de novo* findings or revise those already made by the department. *Id.* "Our standard of review on petitions for certiorari is whether the commissioner acted illegally with respect to jurisdiction, authority or observance of the law, whereby he arrived at a conclusion which could not legally or reasonably be made, or . . . abused his discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Gunzel*, 124 N.H. 495, 498, 471 A.2d 1189, 1190 (1984) (quotation omitted).

The petitioner argues that the hearings officer improperly admitted Dr. O'Neil's impairment report. First, the petitioner contends that the impairment report was an *ex parte* communication sent to the labor department in violation of New Hampshire Administrative Rules, Lab 203.02. Second, she argues that the report was not provided to her by the carrier, thus contravening New Hampshire Administrative Rules, Lab 204.06, 503.01, and RSA 281-A:23, V(d) (Supp. 1992).

■ *Ex parte* communication, as defined by New Hampshire Administrative Rules, Lab 201.02, "means the transmittal of evidence or statements concerning the merits of a contested case to or from a hearings officer without notice to all parties to the proceeding and

not done in their presence." Rule 203.02 states that unless authorized by law or rules of the labor department, "no person shall make an ex parte communication to any officer or employee of the department . . . who is, or may reasonably be expected to be, involved in the decisional process in a contested case . . . ." N.H. ADMIN. RULES, Lab 203.02. The hearings officer specifically noted, with respect to petitioner's counsel's objection, that the report had been "admitted to the record as it was in the Labor Departments [*sic*] possession prior to August, 1991." Moreover, the hearings officer referred to a conversation between the labor department and counsel's office in which counsel discussed his opposition to the results contained in the impairment report. The petitioner, therefore, was certainly on notice of the fact that the impairment report had been transmitted to the department. We cannot agree that such communication fits within the definition of *ex parte* communication that Rule 203.02 is intended to prohibit.

■■ Turning to the petitioner's contention that the impairment report was not disclosed to her prior to the hearing and thus its admission was error, we do not agree. In order for us to set aside the decision of the hearings officer, the petitioner must show that she suffered material prejudice from admission of the impairment report. *Attitash Mt. Service Co. v. Schuck*, 135 N.H. 427, 430, 605 A.2d 1067, 1070 (1992); *Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 691, 433 A.2d 1291, 1295 (1981). The petitioner has failed to demonstrate such material prejudice.

Under New Hampshire Administrative Rules, Lab 204.06, "[a]ll parties to a dispute . . . shall disclose to all parties in advance of the hearing the *nature* of all evidence and submissions to be presented." (Emphasis added.) The petitioner possessed substantially all the information contained in the impairment report before the day of the hearing. In particular, we highlight six pieces of information that comprise a substantial portion of the report: (1) Dr. O'Neil's diagnosis; (2) dominance of the petitioner's right side; (3) measurement of her "grip strength"; (4) measurement of her "key pinch"; (5) assessment of her "three-point chuck pinch"; and (6) the final impairment calculation of eight percent. Between the IME report and the attached cover letter, which the petitioner did have prior to the hearing, she possessed each of these six pieces of information. Thus, the impairment report merely summarized the information that the petitioner did have, with the minor exception of the short calculation that generated the eight percent figure. As for that calculation, the petitioner was on notice on August 27 that the opposing party had filed a

report with the department that contained the final impairment calculation. Petitioner's counsel, at that point, could have requested a copy of the report or, at the very least, inquired further. Instead, counsel waited until the day of the hearing and merely objected to admission of the report, rather than requesting a continuance. Considering the information that the petitioner knew before the hearing from the IME report and the accompanying cover letter, we find that petitioner's counsel was apprised of the *nature* of the evidence contained in the impairment report. *See* N.H. ADMIN. RULES, Lab 204.06.

Alternatively, the petitioner argues that Rule 503.01 prohibits any party or its representatives from "send[ing] anything in writing to the department . . . concerning a case before the department without simultaneously sending a complete copy with enclosures to the opposing party." N.H. ADMIN. RULES, Lab 503.01. While the record is not clear whether Liberty Mutual complied with this formal requirement, the petitioner had notice that the impairment report was filed, knew the substance of the report prior to the hearing, but waited until the day of the hearing to review the impairment report and dispute its admission. Under these circumstances, we will not set aside the hearings officer's decision.

Additionally, the petitioner argues that she was denied due process rights under part I, article 14 of the New Hampshire Constitution, and the fifth and fourteenth amendments to the United States Constitution. The petitioner contends that she and her counsel were not given sufficient time before the hearing for "proper study and analysis," resulting in a "trial of issues by 'ambush' or 'surprise.'" As explained above, however, the petitioner and her counsel had notice of the report's existence and possessed the substance of the report. Moreover, both petitioner's counsel and expert reviewed the impairment report before the hearing began. Petitioner's counsel merely objected to the introduction of the impairment report; he did not request a continuance. *See* N.H. ADMIN. RULES, Lab 203.05. The petitioner would not have been prejudiced by simply requesting a continuance had counsel believed that he needed additional time to review or respond to the impairment report. After the hearings officer admitted the impairment report over counsel's objection, petitioner's counsel questioned Dr. Wing about the report. Dr. Wing criticized the permanent impairment figure. After the hearing, while the record was held open, counsel had further opportunity to scrutinize the report and present arguments as to why the eight percent

determination should be rejected. Thus, we reject the petitioner's due process arguments.

The petitioner next argues that the hearings officer's decision was illegal, unreasonable, arbitrary and capricious, and an abuse of discretion, because it was based solely upon Dr. O'Neil's impairment report. First, the petitioner contends that the hearings officer should not have considered the impairment report because it did not refer to the "American Medical Association Guides to the Evaluation of Permanent Impairment" (AMA Guides), as required by RSA 281-A:32, XIV (Supp. 1992). In a letter received by the labor department on September 13, 1991, however, Dr. O'Neil stated that his permanent impairment figure was "generated from a program based exclusively on the third edition of the 'AMA Guides to the Evaluation of Permanent Impairment.'" Thus, we reject the petitioner's contention.

Second, the petitioner argues that the hearings officer erred by disregarding Dr. Wing's testimony and, instead, adopting Dr. O'Neil's impairment report. RSA 281-A:32, XII (Supp. 1992) provides that "[i]n the event of dispute as to . . . the percentage of permanent partial loss . . . the labor commissioner [or hearings officer] shall determine the award to be made on the basis of competent medical evidence [and the] findings shall be final." See also RSA 281-A:42-b (Supp. 1992). We will not disturb a hearings officer's factual findings or the decision based thereon if supported by competent evidence in the record. See Appeal of Lambrou, 136 N.H. 18, 20, 609 A.2d 754, 755 (1992); Xydias v. Davidson Rubber Co., 131 N.H. 721, 723–24, 560 A.2d 627, 628 (1989). When the record contains competent expert medical evidence that supports the determination, it is not ordinarily reversible even if contrary testimony in the record would support another result. Rowe v. City of Portsmouth, 122 N.H. 146, 148, 441 A.2d 1181, 1183 (1982). Moreover, the hearings officer, as trier of fact, has discretion to credit or discredit the testimony of expert witnesses. Xydias, supra at 725, 560 A.2d at 629. The hearings officer in the present case properly exercised her discretion in awarding eight percent permanent impairment based on Dr. O'Neil's reports. We conclude that Dr. O'Neil's IME evaluation, cover letter, and impairment report constitute competent medical evidence supporting the eight percent impairment award.

The petitioner further contends that the hearings officer is required to identify the "valid competing evidence" or considerations that led her to reject Dr. Wing's testimony. The petitioner, how-

ever, mischaracterizes Dr. Wing's testimony as "uncontradicted" medical testimony. A hearings officer is only required to state reasons for rejecting testimony when "declin[ing] to accept *uncontroverted* evidence." *Lambrou*, 136 N.H. at 20, 609 A.2d at 755 (emphasis added). In the present case, the testimony of Dr. Wing was clearly in conflict with Dr. O'Neil's medical reports. Therefore, the hearings officer was not bound by such a requirement.

Finally, the petitioner requests attorney's fees, interest and costs pursuant to RSA 281-A:44 (Supp. 1992) should we reverse the decision of the hearings officer. We need not address this claim because we do not disturb the hearings officer's decision.

The petitioner has not shown that the hearings officer acted illegally with respect to jurisdiction, authority, or observance of the law, or that she abused her discretion or acted arbitrarily, unreasonably, or capriciously. *See Gunzel*, 124 N.H. at 498, 471 A.2d at 1190. Accordingly, we conclude that the labor department's permanent impairment award must stand.

*Petition dismissed.*

All concurred.