Original
No. 93-110

PETITION OF SANDRA GILPATRIC

(New Hampshire Department of Labor)

March 25, 1994

*Seufert Professional Association*, of Franklin (*Christopher J. Seufert* on the brief, and *William J. Schultz* orally), for the petitioner.

*Kelliher & Clougherty* and *Elizabeth Cazden*, of Manchester (*Thomas W. Kelliher* and *Ms. Cazden* on the brief, and *Mr. Kelliher* orally), for International Packaging Corporation and Liberty Mutual Insurance Company.

JOHNSON, J.   The petitioner, Sandra Gilpatric, challenges the decision of the New Hampshire Department of Labor (department) awarding an eight percent permanent impairment award under RSA 281-A:32 (Supp. 1993) (paragraph XII effective until Jan. 1, 1994) (amended effective Jan. 1, 1994). Gilpatric argues that the department erred in not accepting the dual diagnosis found in a previous superior court order, and in disregarding her expert's opinion as to impairment. We affirm.

Gilpatric had been employed at the International Packaging Corporation as a factory assembly-line worker for nearly fifteen years when, in early 1988, she began to experience tingling and numbness in both her hands and forearms. Her condition was diagnosed as car-

pal tunnel syndrome, which results from a narrowing of the space between the forearm and hand (carpal tunnel) or an enlarging of the structures within the wrist, causing compression of the median nerve. 3B R. GRAY & L. GORDY, ATTORNEYS' TEXTBOOK OF MEDICINE ¶ 100.54, at 100–72 to 100–73 (1988). After surgery on her right wrist in April 1988, Gilpatric returned to the factory. She stopped work at the end of 1988, however, because of problems in her left wrist that eventually led to surgery in March 1990.

After an August 22, 1990, hearing at the department concerning Gilpatric's cooperation with vocational rehabilitation under RSA 281-A:25 (Supp. 1989) (amended 1990) and the extent of her disability under RSA 281-A:48 (Supp. 1993) (paragraph V effective until Jan. 1, 1994) (amended effective Jan. 1, 1994), the department reduced Gilpatric's benefits from temporary total disability to the diminished earning capacity rate. The petitioner's *de novo* appeal to the superior court, pursuant to the then-existing appeal procedure under RSA 281-A:48, V, resulted in the reversal of the department's decision and the reinstatement of temporary total disability compensation. The court stated in its order of April 21, 1992, that the "nature of Ms. Gilpatric's injuries is bilateral carpal tunnel/overuse syndrome . . . ."

The final hearing before the department was held on December 10, 1992, after Gilpatric made a request for a permanent impairment award pursuant to RSA 281-A:32. In this proceeding, the petitioner's expert, Dr. Rex Carr, presented a rating of thirty-one percent impairment, based on a diagnosis of bilateral carpal tunnel syndrome and overuse syndrome, while the insurance carrier's expert, Dr. Kenneth O'Neil, whose diagnosis was solely bilateral carpal tunnel syndrome, rated it as eight percent impairment. On December 21, 1992, the department determined that Gilpatric was entitled to an eight percent permanent impairment award. Her motion for reconsideration was denied.

Prior to January 1, 1994, permanent impairment awards of the labor commissioner were final, *see* RSA 281-A:32, XII (Supp. 1993) (effective until Jan. 1, 1994), and the appropriate remedy for a dispute was certiorari. *Petition of Blackford*, 138 N.H. 132, 133, 635 A.2d 501, 502 (1993). *But see* Laws 1993, ch. 226 (effective Jan. 1, 1994).

Gilpatric first argues that the superior court's finding in the *de novo* appeal regarding her diagnosis is entitled to preclusive effect in this proceeding. We disagree.

If a prior judgment is to estop a party in a later action from relitigating an issue, then at a minimum the issue subject to estoppel

must be identical in each action, the first action must have resolved the issue finally on the merits, and the party to be estopped must have appeared in the first action, or have been in privity with someone who did so. *Petition of Breau*, 132 N.H. 351, 360, 565 A.2d 1044, 1049 (1989). The party to be estopped must have had a full and fair opportunity to litigate the issue. *Id.* In addition, the finding must have been essential to the first judgment. *Morin v. J.H. Valliere Co.*, 113 N.H. 431, 434, 309 A.2d 153, 155 (1973); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

The issue in the prior hearing before the superior court was whether Gilpatric was sufficiently disabled to continue receiving temporary total disability benefits rather than diminished earning capacity benefits (for partial disability status). As to this issue of work capacity, Dr. Carr testified in his deposition that Gilpatric suffers from bilateral carpal tunnel syndrome which is "a subset of overuse syndrome," plus a "second component of the muscular problem in the arms and wrist." Dr. Carr also stated that Gilpatric's total impairment was thirty-one percent. The superior court's order indicates that the court considered the deposition testimony useful "in detailing Ms. Gilpatric's physical symptom[at]ology" and in describing the "nature of Ms. Gilpatric's injuries" to be "bilateral carpal tunnel/overuse syndrome."

■ We question whether the threshold requirement for collateral estoppel, namely the existence of a finding by the trial court, is met by this casual language in the trial court order. Even if we assume, *arguendo*, that the superior court made such a finding, the issues were not identical. The question before the department in December 1992 was whether the petitioner was entitled to a permanent impairment award. This issue is distinct from the issue raised in the superior court of the claimant's work capacity for purposes of temporary total disability compensation. Further, the issue before the superior court was one of Gilpatric's condition *at that time*. The court made no finding of permanency, but rather reinstated *temporary* total disability benefits. The issue before the department, however, was one of Gilpatric's condition some eight months later. *See Ainsworth v. Claremont*, 108 N.H. 55, 56–57, 226 A.2d 867, 869–70 (1967). Gilpatric's diagnosis also was not essential to the superior court's judgment because a finding as to her work capacity did not depend upon the precise nature of her injuries, nor the exact scope of her medical diagnosis. *See Morin*, 113 N.H. at 434, 309 A.2d at 155. In sum, the superior court's order did not compel the department to accept the court's description of Gilpatric's disability.

Gilpatric next argues that the hearings officer erred by accepting the eight percent permanent impairment rating of the insurance carrier's expert, Dr. O'Neil, whose analysis of her injury was solely bilateral carpal tunnel syndrome. Gilpatric contends that the hearings officer should have accepted the thirty-one percent permanent impairment rating of Dr. Carr because it better reflects the description of overuse syndrome *and* bilateral carpal tunnel syndrome mentioned in the superior court order.

■ "In the event of a dispute as to the amount of compensation or the percentage of permanent partial loss or both, the commissioner shall determine the award to be made on the basis of competent medical evidence. The commissioner's findings shall be final." RSA 281-A:32, XII (Supp. 1993) (effective until Jan. 1, 1994). *But see* Laws 1993, ch. 226 (effective Jan. 1, 1994). We will not disturb a hearings officer's factual findings or the decision based thereon if supported by competent evidence in the record. *Petition of Blake*, 137 N.H. 43, 49, 623 A.2d 741, 745 (1993). When the record contains competent expert medical evidence that supports the determination, it is not ordinarily reversible even if contrary testimony in the record would support another result. *Id.* The hearings officer did not err in disregarding the testimony of Dr. Carr because we afford the hearings officer discretion to credit or discredit the testimony of expert witnesses. *See id.*

■ We hold that Dr. O'Neil's diagnosis and evaluation constitute competent medical testimony that supports the hearings officer's decision. Dr. O'Neil's diagnosis of "bilateral carpal tunnel syndrome with bilateral carpal tunnel releases" matched the diagnoses of other physicians, including that of Gilpatric's treating physician, Dr. Noboru Murakami, who examined her and submitted reports to the department. Dr. O'Neil's calculation of eight percent permanent impairment, following the "Guides to the Evaluation of Permanent Impairment" published by the American Medical Association, is also found to be reliable. *See* RSA 281-A:32, XIV (Supp. 1993); N.H. ADMIN. RULES, Lab 514.03. Since the department based its decision on a competent diagnosis, we reject Gilpatric's contention that the American Medical Association guidelines were misapplied.

*Affirmed.*

All concurred.