Department of Health and Human Services
No. 98-816

### APPEAL OF MCKERLEY HEALTH FACILITIES & a.

(New Hampshire Department of Health and Human Services)

August 15, 2000

*Stebbins, Bradley, Wood & Harvey, P.A.*, of Hanover (*David Putnam* on the brief) and *Dinse, Knapp & McAndrew, P.C.*, of Burlington, Vermont (*Samuel Hoar, Jr.* on the brief and orally), for the petitioners.

*Philip T. McLaughlin*, attorney general (*Suzan M. Lehmann*, assistant attorney general, on the brief and orally), for the New Hampshire Department of Health and Human Services.

GROFF, J. The petitioners, James McKerley, Forrest McKerley, Matthew McKerley, and McKerley Health Facilities, appeal a final

decision of the New Hampshire Department of Health and Human Services Administrative Appeals Unit (the department). The department concluded that the New Hampshire Division of Human Services (the division) properly assessed depreciation recapture in connection with the sale of "partnership interests" in McKerley Health Facilities to two subsidiaries of Genesis Health Ventures, Inc. (Genesis). We affirm in part, vacate in part, and remand.

On June 10, 1988, petitioners James McKerley, Forrest McKerley, and Matthew McKerley (the McKerleys) formed a general partnership, McKerley Health Facilities, that acquired and operated several nursing homes in New Hampshire and Vermont. As a Medicaid program participant, McKerley Health Facilities received $781,562 in depreciation cost reimbursement from the State of New Hampshire between June 1, 1988, and November 30, 1995. "[Depreciation cost reimbursement] payments [a]re designed to reflect the progressive exhaustion of the . . . facility and equipment in the course of caring for Medicaid patients." *N.H. Division of Human Services v. Allard*, 141 N.H. 672, 673, 690 A.2d 566, 567 (1997) (quotation omitted).

On August 18, 1995, the McKerleys entered into a purchase agreement with Genesis whereby Genesis acquired the right to purchase the partnership interests of McKerley Health Facilities. In the purchase agreement the McKerleys agreed, *inter alia*, to: (1) indemnify Genesis for Medicaid or Medicare "recapture" obligations triggered by the transactions to the extent that any such obligations exceeded $700,000; (2) hold in escrow an amount necessary to secure the partnership's indemnification obligations; (3) prepare a final partnership tax return; and (4) provide Genesis with a list of the partnership's tangible property, leases, real property, inventory, accounts receivable, contracts, trade accounts payable, accrued liabilities, and cash balances of bank accounts. Genesis agreed to indemnify and hold the McKerleys harmless for events occurring after the closing date.

On November 30, 1995, Genesis assigned the right to purchase the partnership interests to Meridian Healthcare, Inc. and Meridian Health, Inc. (collectively Meridian), two of its subsidiaries. That same day, the McKerleys sold all of their partnership interests in McKerley Health Facilities to Meridian. As part of the transaction, the parties amended the partnership agreement to reflect the withdrawal of the McKerleys from the partnership and the substitution of Meridian as partners. In the assignment, the McKerleys

irrevocably assign[ed], transfer[ed], and set over to Meridian Healthcare and Meridian Health all of their right, title

and interest in and to all of the issued and outstanding partnership interests of [McKerley Health Facilities] owned by them, together with all of their rights in and to their capital accounts, as reflected in the books and records of [McKerley Health Facilities], their interests in [McKerley Health Facilities'] profits, losses, distributions, and any and all of their other rights and interests as partners of [McKerley Health Facilities].

The division subsequently determined that the transaction produced a gain and sent Forrest McKerley a notice of depreciation recapture. See N.H. MED. ASST. MANUAL 9999.7(b)(4). The McKerleys refused to pay and requested administrative review. Following a hearing, the department ruled that the division was entitled to recover the depreciation payments made to the partnership in the years prior to the sale. The McKerleys filed a motion for rehearing, which was denied. This appeal followed.

As a preliminary matter, the McKerleys maintain that this appeal is governed by RSA chapter 541. RSA 541:2 (1997), however, provides for review under that chapter only "[w]hen authorized by law." Neither the department's regulations nor any statutory provision authorizes an appeal from a decision of the department to this court. Although the McKerleys have mistaken their remedy, we will treat their appeal as a petition for writ of certiorari. See Petition of Ann Crane, 132 N.H. 293, 298, 564 A.2d 449, 452 (1989). "Accordingly, the petitioners are entitled to the limited determination of whether [the department] has exceeded its jurisdiction or authority, otherwise acted illegally, abused its discretion, or acted arbitrarily, unreasonably, or capriciously." Id. at 299, 564 A.2d at 452 (quotation omitted).

At the time of the transaction, under both the federal Medicare and Medicaid programs, States that received program funds were required to reimburse providers for the costs of caring for qualified patients. See 42 U.S.C. § 1396a(a)(13)(A) (1994) (amended 1997); see also Hoodkroft Convalescent Ctr. v. State of N.H., DHS, 879 F.2d 968, 969 (1st Cir. 1989), cert. denied, 493 U.S. 1020 (1990). The State of New Hampshire participated in this program and considered depreciation of buildings and equipment one of the reimbursable costs of providing care. See N.H. MED. ASST. MANUAL 9999.7(b). If a depreciable asset was sold, the division recaptured the depreciation paid to the extent that the sale price exceeded the depreciated original cost of the asset. See N.H. ADMIN. RULES, He-W 593.10(d); N.H. MED. ASST. MANUAL 9999.7(b)(1)(d).

New Hampshire's regulations do not address the depreciation recapture consequences of a sale of partnership interests. Therefore, we must determine whether the division is entitled to depreciation recapture based upon the Federal Medicare Provider Reimbursement Manual (PRM). *See* N.H. ADMIN. RULES, He-W 593.34 ("Decisions governing the allowability of costs not specifically detailed at He-W 593 shall be pursuant to the Medicare Provider Reimbursement Manual, Part I, HCFA-Pub 15-1 in effect at the time of such determination."). The PRM allows recapture of depreciation upon the "change of ownership" of depreciated assets, and provides that "[t]he removal, addition, or substitution of a partner [amounts to a change of ownership], unless the partners expressly agree otherwise, as permitted by applicable State law." FEDERAL MEDICARE PROVIDER REIMBURSEMENT MANUAL, Part I, § 1500.1 (Nov. 1995).

The McKerleys argue that a substitution of partners occurred and they had expressly agreed that such a substitution would not constitute a change in ownership. Thus, they argue, depreciation recapture is not permitted. This argument ignores the facts of this case and misapplies the law. First, there is no evidence that the McKerleys expressly agreed that a substitution of partners would not constitute a change in ownership.

Moreover, despite their assertion to the contrary, the McKerleys did not merely assign their rights to a share of partnership profits and surplus. Under State law, such an assignment would not, of itself, have dissolved the partnership. *See* RSA 304-A:27 (1995). Instead, the McKerleys transferred all of their rights in the partnership: their rights in specific partnership property, their share of profits and surplus, and their right to participate in management. *See* RSA 304-A:24, :26 (1995). No partnership right or interest of any kind was retained by the McKerleys upon their withdrawal from the partnership.

■ The PRM provides that when some but not all partners withdraw, the remaining partners may agree to create a new partnership and continue to conduct business together without triggering a change in ownership. *See* 2 MEDICARE AND MEDICAID GUIDE (CCH)¶ 5849G-9 (Oct. 14, 1993). Here, however, all of the existing partners withdrew from the partnership, substituted two unrelated corporations as partners, and conveyed all of their partnership rights and interests to the new partners. We conclude that these circumstances constituted a change in ownership triggering depreciation recapture.

·The petitioners further argue that the transaction is .more analogous to a sale of corporate stock than to a sale of assets. "[A] pure stock sale is not subject to recapture, as the sale does not involve the transfer of depreciable assets from one party to another." *Allard*, 141 N.H. at 675, 690 A.2d at 568. This argument is also without merit because the transaction involved the transfer of depreciable assets to Meridian.

■ Furthermore, the nature of a partner's interest in a partnership is fundamentally different from that of a stockholder in a corporation. In a partnership, partners are co-owners of specific partnership property, holding as tenants in partnership. *See* RSA 304-A:25, I (1995). "[U]nlike a general partnership the corporate entity is unaffected by changes in ownership." 1 A. BROMBERG & L. RIBSTEIN, BROMBERG & RIBSTEIN ON PARTNERSHIP § 1.01(b), at 1:5 (Apr. 1996). Because the McKerleys' transfer of all of their partnership rights and interests constituted a change in ownership, we conclude that the transaction is not analogous to a sale of corporate stock.

As we noted in *Allard*, 141 N.H. at 675, 690 A.2d at 568, when evaluating whether a transaction is subject to recapture, "we adhere to the recognized principle that the substance of the transaction, and not its form, will control the analysis of transfers under the federal programs." We will not be misled by the petitioners' attempt to elevate form over substance in defining this transaction since the record clearly establishes an intent to transfer the assets of McKerley Health Facilities to Meridian. As part of the transaction, the McKerleys agreed to prepare a final accounting and file a final partnership tax return. In New Hampshire, a final tax return must be submitted "when the taxpayer is no longer subject to taxation in New Hampshire and should be removed from the department's mailing list." N.H. ADMIN. RULES, Rev 221.03(a)(3)(c). The petitioners' agreement to prepare a final partnership tax return is inconsistent with their contention, on appeal, that the partnership continued. Further, the parties contemplated the depreciation recapture consequences of this transaction and allocated responsibility for payment of those obligations. Lastly, the division treated the transaction as an asset sale, allowing Meridian to begin depreciation at historical cost value.

The petitioners next argue that the department erred in upholding the amount of depreciation recapture assessed by the division. The division maintains that it computed the gain according to the regulations and that the petitioners waived their right to challenge

the determination by failing to produce any credible evidence that the division erred.

■ In its order on appellant's motion for rehearing, the department concluded that in its final decision, it had "determined that [the division] met its burden and established a legal and factual basis supporting the amount of the recapture sought." Our review of the final decision, however, revealed no factual findings pertaining to the calculation of depreciation recapture. As part of our review, we look to the department's findings to determine whether it "arrived at a conclusion which could not legally or reasonably be made." *Petition of Blake*, 137 N.H. 43, 46, 623 A.2d 741, 743 (1993). Based on the record before us, we are unable to make that determination. Therefore, we vacate in part and remand to the department for a ruling supported by factual findings as to the amount of depreciation recapture.

*Affirmed in part; vacated in part; remanded.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit; GRAY, J., retired superior court justice, and MCHUGH and GROFF, JJ., superior court justices, sat by special assignment pursuant to RSA 490:3; all who sat concurred.

Justices who did not sit did not, following oral argument, participate in discussions, decisions, votes, or preparation of the opinion in any way.