Department of Health and Human Services
No. 2002-545

PETITION OF MOORE CENTER SERVICES, INC. (AREA AGENCY VII)
(New Hampshire Department of Health and Human Services
Administrative Appeals Unit)

Argued: September 17, 2003
Opinion Issued: October 24, 2003

*Michael R. Chamberlain*, of Manchester, on the brief and orally, for the petitioner.

*Disabilities Rights Center, Inc.*, of Concord (*Kimberly A. Hallquist* and *Ronald K. Lospennato* on the brief, and *Ms. Hallquist* orally), for the respondent.

DALIANIS, J. The petitioner, Moore Center Services, Inc. (MCS), appeals the decision of the New Hampshire Department of Health and Human Services Administrative Appeals Unit (department) finding the respondent, William S. (William), eligible for services for the developmentally disabled under RSA chapter 171-A and New Hampshire Administrative Rules, He-M 503 (Rule 503). We affirm.

In February 2001, William was found to be incapacitated by the Rockingham County Probate Court and a public guardian was appointed for him. Pursuant to RSA 171-A:6 (2002), William's court-appointed guardian filed an application requesting petitioner MCS, as the local area agency, to determine whether William is developmentally disabled and eligible for state-funded services. MCS determined that William is not

developmentally disabled, and, therefore, is ineligible to receive services under RSA chapter 171-A. William appealed to the department, before which the parties agree MCS had the burden of proof to support its decision. The department reversed MCS' decision denying William eligibility. The department found that MCS failed to prove that its denial of eligibility under RSA chapter 171-A and Rule 503 was supported by a preponderance of the evidence. Accordingly, the department concluded that William is developmentally disabled as a result of a specific learning disability and eligible for services pursuant to RSA chapter 171-A. MCS appealed.

On appeal, MCS is entitled to the limited determination of whether the department has exceeded its jurisdiction or authority, otherwise acted illegally, abused its discretion, or acted arbitrarily, unreasonably, or capriciously. *Appeal of McKerley Health Facilities*, 145 N.H. 164, 166 (2000).

The department made the following findings of fact. William is a nineteen-year-old man who has low average cognitive functioning, a severe language-based learning disability and behavioral and mental health issues. William has not been able to remain employed for any length of time, he is not capable of living or taking care of his health or financial needs independently, and he requires supervision in many aspects of daily living. He exhibits severe impairments in adaptive behaviors and has co-existing psychiatric issues. The department found that William's "impairments in adaptive behavior are a result of his cognitive deficits, specific learning disability and social/emotional factors." Furthermore, the department found that the disability arose before the age of twenty-two and is expected to continue indefinitely. Thus, the department concluded that William is developmentally disabled under RSA chapter 171-A and therefore eligible for services. RSA 171-A:2, V (2002).

Both parties agree that William has a specific learning disability that impairs his ability to communicate with others, to attend normal educational institutions, and to complete certain job applications. It is also agreed that William has additional mental health issues, as well as drug and alcohol dependencies. Additionally, both parties concede that William, to some extent, is unable to function normally in society.

The essential issue in this case is whether William has a developmental disability as defined in RSA 171-A:2, V, and, thus, is eligible to receive services pursuant to RSA chapter 171-A and Rule 503. RSA 171-A:2, V defines "Developmental disability" as a "disability: (a) Which is attributable to ... a specific learning disability ...; and (b) Which ... constitutes a severe disability to such individual's ability to function

normally in society." MCS contends that William's disability, and his inability to function normally in society, are not attributable to his specific learning disability, but rather to his multiple other problems. On appeal before the department, MCS bore the burden to prove by a preponderance of the evidence that William's disability *is not* attributable to his specific learning disability and that it *is not* the cause of William's inability to function normally in society. N.H. ADMIN. RULES, He-C 204.12 (d). We must look to RSA 171-A:2, V to determine whether MCS met its burden.

When construing the meaning of a statute, we look at the language in the statute, and where possible, we ascribe the plain and ordinary meanings to words used. *McKenzie v. City of Berlin*, 145 N.H. 467, 470 (2000).

RSA 171-A:2, V does not articulate what is necessary for the disability to be attributed to the specific learning disability, or in what way the disability must contribute to one's inability to function normally in society. When discussing New Hampshire's unemployment compensation statute, we have found the ordinary meaning of the phrase "attributable to" to require "some connection with or relation to." *Appeal of Swift*, 134 N.H. 177, 180 (1991); *see* RSA 282-A:32 (1999); *Nashua Corp. v. Brown*, 99 N.H. 205, 207 (1954). Other States consider something as "attributable to" if it is the "result of" or "connected with." *See Mulack v. Hickory Hills Police Pension Bd.*, 625 N.E.2d 259, 264 (Ill. App. Ct. 1993); *Helmin v. Griswold Ribbon & Typewriter*, 345 N.W.2d 257, 262-63 (Minn. Ct. App. 1984); *see also Bussmann Mfg. Co. v. Indus. Comm'n Of Mo.*, 327 S.W.2d 487, 491 (Mo. Ct. App. 1959) (finding that something is attributable to another condition if it was a contributing factor to that condition; it need not be the only factor).

The plain language of RSA 171-A:2, V requires that the specific learning disability have some connection with or relation to the disability, and that the disability in some way causes the individual's inability to function normally in society. The statute, therefore, permits one's disability to be solely, primarily or even secondarily attributable to a specific learning disability. *See* RSA 171-A:2, V (a). Likewise, the language allows for the disability to be the sole cause, the primary cause, or a secondary cause of one's inability to function normally in society. *See* RSA 171-A:2, V (b).

Although William suffers from multiple problems in addition to a specific learning disability, so long as his specific learning disability has some connection with or relation to his disability, and the disability contributes to his inability to function normally in society, he is developmentally disabled under RSA 171-A:2, V. We find that MCS failed

to prove by a preponderance of the evidence that William's specific learning disability does not contribute to his impairments. Whether his specific learning disability is the primary cause or merely a secondary cause is irrelevant under RSA 171-A:2, V in its current form.

In this case, where the burden of proof was upon MCS and where William suffers from a multitude of psychiatric issues, substance abuse and a specific learning disability, we cannot conclude that the department's decision finding him developmentally disabled pursuant to RSA 171-A:2, V is arbitrary, unreasonable or erroneous as a matter of law. The department found that William's specific learning disability *and* his other problems all contributed to his disability and his inability to function normally in society.

Finally, MCS argues that William should only be conditionally eligible for services because the diagnostic information pertaining to his developmental disability is inconclusive. N.H. ADMIN. RULES, He-M 503.03(e). We disagree. The department conclusively found that William has a developmental disability within the meaning of RSA chapter 171-A; thus, he is eligible for services.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.